UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

SUSAN BURHANS
        Plaintiff                  :        CIVIL ACTION NO.:
                                              :        3:12 CV1462

vs.

YALE UNIVERSITY
        Defendant                 :        MAY 15, 2014

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

      The defendant, Yale University ("Yale"), hereby submits the following memorandum of law in support of its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## I.    FACTUAL BACKGROUND

      The plaintiff was hired as security educator for Yale in 1999 and the present matter arises from her employment with Yale. (See Amended Complaint, Count One, ¶ 2.) The plaintiff asserts that the present lawsuit is an "action alleging unlawful retaliation in violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681 *et seq.* (Title IX)." (See Amended Complaint, ¶ 1.) It is the plaintiff's claim that she was retaliated against "for her good faith reporting and complaining about Yale's noncompliance with Title IX." (See Amended Complaint, ¶ 94; see also Amended Complaint, ¶¶ 3, 4, 12 and 17.) The complaint, however, fails to identify any specific act of non-compliance that she brought to Yale's attention. Nonetheless, the plaintiff claims that Yale repeatedly retaliated against her as a results of her complaints by, *inter alia,* taking away decision-making authority, denying her

**DONAHUE, DURHAM & NOONAN, P.C.**
Concept Park • 741 Boston Post Road
Guilford, Connecticut 06437
Tel: (203) 458-9168 • Fax: (203) 458-4424
Juris No. 415438

fair pay, rejecting applications for promotions, and ultimately terminating her employment effective November 2012. (See Amended Complaint, Count One, ¶ 14.)

For the reasons stated herein, Count One of the Amended Complaint, alleging retaliation pursuant to Title IX, should be dismissed for failure to state a claim upon which relief can be granted.

## II.    LEGAL STANDARD

"[D]ismissal is appropriate [pursuant to Fed. R. Civ. P. 12(b)(6)] if the plaintiff can prove no set of facts that would entitle him to relief." Cooper v. Parsky, 140 F.3d 433, 440 (2nd Cir. 1998). To avoid dismissal, a plaintiff must do more than plead mere "conclusory allegations or legal conclusions masquerading as factual conclusions. . . . The point at which conclusory allegations become valid pleadings lies where the plaintiff has asserted sufficient facts that, when construed liberally, allow the inference of a violation." (Citations omitted; internal quotation marks omitted.) Plumey v. New York State, 389 F. Supp. 2d 491 (S.D.N.Y. 2005). See also Gregory v. Daly, 243 F.3d 687, 692 (2nd Cir.2001). In deciding a Rule 12(b)(6) motion, courts "stop well short of saying that plaintiffs bear no burden at the pleading stage," because they must allege "those facts necessary to a finding of liability." Amron v. Morgan Stanley Inv. Advisors, Inc., 464 F.3d 338, 343-44 (2d. Cir. 2006).

## III.   ARGUMENT

### A.    Count One Of The Amended Complaint Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted.

Count One of the Amended Complaint, which purports to allege a claim of retaliation in violation of Title IX (see Amended Complaint, Count One, ¶ 1), should be dismissed for

failure to state a claim upon which relief can be granted because the plaintiff has not alleged that she engaged in a protected activity.

Title IX provides that "no person in the United States shall, on the basis of sex, . . . be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a). Title IX "does not, however, expressly authorize a private right of action ..." Cannon v. University of Chicago, 441 U.S. 677, 682-683 (1979). In Cannon, the Supreme Court recognized an implied private right of action for gender-based discrimination under Title IX. Thereafter, the Supreme Court held that Title IX implies a private cause of action which encompasses "[r]etaliation against a person *because that person has complained of sex discrimination.*" (Emphasis added.) Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173, 125 S. Ct. 1497, 161 L. Ed. 2d 361 (2005). See also Fairchild v. Quinnipiac University, 2014 U.S. Dist. LEXIS 55511, *7 (D. Conn. Apr. 22, 2014) (Underhill, J.) (Title IX prohibits a funding recipient from retaliating against a person "because [s]he complains of sex discrimination..."). Therefore, Title IX has been interpreted to allow a private cause of action in only two limited situations: (1) where the plaintiff alleges discrimination on the basis of sex, (2) or where the plaintiff alleges retaliation based on a complaint of sex discrimination. The present plaintiff's claim does not fit within either of these categories.

In the present case, the plaintiff fails to claim that the alleged retaliation she experienced was in response to complaints of sex discrimination. As such, she has not identified a protected activity under Title IX, and her claim does not fall within the narrowly

defined circumstances where a Title IX cause of action is permitted.[1]  The court in Armour v. Bd. of Educ. of of Prince George's County, 2012 U.S. Dist. LEXIS 109831 (D. Md. Aug. 3, 2012) (copy attached), addressed a similar situation.  The plaintiff in Armour, a public school employee, brought suit under Title IX alleging claims of sex-based hostile work environment and retaliation.  In addressing the defendant's motion for summary judgment as to this claim, the court recognized that "[t]he threshold issue for any Title IX claim is whether there has been discrimination based on sex.  A claim of hostile work environment is only actionable under Title IX if the alleged hostility amounts to sex-based discrimination… Similarly, a claim of retaliation under Title IX only lies where the claimant suffers retaliation based on the filing of a complaint of gender discrimination."  (Citations omitted; internal quotation marks omitted.) Id. at *10-11.  The court reasoned that while the record evidence did suggest that Linda Burgess, the vice principal of the plaintiff's school, "may have bullied, intimidated, and physically threatened and assaulted Armour, all of which might support causes of action other than Title IX (or Title VII claims), nothing in the record warrants an inference that Burgess created a hostile work environment or otherwise discriminated against Armour on the basis of her sex under Title IX."  Id. at *12.  The Armour court also held that "[b]ecause there is no

---

[1] The Second Circuit has "held that Title VII principles apply in interpreting Title IX." Torres v. Pisano, 116 F.3d 625, 630 (2d Cir. N.Y. 1997). See also Murray v. New York Univ. College of Dentistry, 57 F.3d 243, 248 (2d Cir. 1995) ("In reviewing claims of discrimination brought under Title IX by employees, whether for sexual harassment or retaliation, courts have generally adopted the same legal standards that are applied to such claims under Title VII.")  As such, "a plaintiff claiming retaliation under Title IX must first establish a prima facie case by showing: (1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action." Papelino v. Albany College of Pharm. of Union Univ., 633 F.3d 81, 91-92 (2d Cir. 2011).

evidence that Armour complained of (or even suffered from) any discrimination based on sex, she is unable to sustain a claim of retaliation under Title IX." Id. at *13.

Doe v. Univ. of the South, 687 F. Supp. 2d 744, 757-758 (E.D. Tenn. 2009) (copy attached), is also instructive.  The plaintiff in Doe was a student of the defendant university, and was accused of sexually assaulting a female student.  Following a hearing, the defendant university determined that the plaintiff did in fact sexually assault the female student and, as punishment, the plaintiff was required to withdraw from the university for two semesters.  The plaintiff brought suit alleging that the defendant university's student disciplinary process, including the sexual assault policies and procedures, violated Title IX as well as the Clery Act. Id. at 755.  The court dismissed the claim, finding that the plaintiff failed to plead facts demonstrating that the actions taken against him were motived by his gender.  The court reasoned that the facts pled by the plaintiff did not contain the "critical component" of a Title IX claim in that the complaint "fails to allege any facts to support a finding that the University's actions were at all motivated by John Doe's gender or sex or constituted gender harassment or sexual harassment... This is a necessary prerequisite for any Title IX claim." (Citations omitted.)  Id. at 757-58.  The court further reasoned that the plaintiff's complaint must be dismissed because the implied right of action under Title IX does not provide for the recovery in damages for violation of Title IX regulations promulgated by the United States Department of Education.  Id at 758.[2]  Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir.

---

[2] It should also be noted, in this regard, that the Clery Act, which requires colleges and universities to report certain crimes considered to be a threat to other students and employees, see 20 U.S.C. § 1092(f)(3), specifically provides that it does not create a private cause of action. See 20 U.S.C. § 1092(f)(14)(A).

2000) (the term "protected activity" refers to an "action taken to protest or oppose statutorily prohibited discrimination"); <u>Goonewardena v. North Shore Long Island Jewish Health Sys.</u>, 2013 U.S. Dist. LEXIS 42529 (E.D.N.Y. Mar. 25, 2013) (dismissing ADA retaliation claim because plaintiff "[did] not make any reference to disability-based discriminatory policies or practices."); <u>Colonna v. Baran Inst. of Tech., Inc.</u>, 2011 Conn. Super. LEXIS 149, *27-29 (Conn. Super. Ct. Jan. 26, 2011) (Peck, J.) (granting motion to strike retaliation claim because plaintiff's allegation that she made complaints concerning comments made by her supervisors that she found to be personally offensive did not constitute a protected activity).

Similarly, the present plaintiff does not allege that she suffered retaliation based on the filing of a complaint of gender discrimination. Rather, the plaintiff alleges that she suffered retaliation because she complained about Yale's alleged non-compliance with Title IX. The plaintiff's complaints of Yale's alleged non-compliance were gender neutral; there is no allegation that such non-compliance was motivated by gender. As such, the plaintiff has failed to allege that she participated in a protected activity under Title IX. In addition, Title IX does not provide a legal basis for the plaintiff's cause of action. Title IX does not specifically create a cause of action for retaliation in response to complaints of inadequacies in programming or non-compliance with reporting requirements, nor has any court determined that Title IX implicitly creates such a cause of action. Therefore, for the reasons stated herein, Count One of the plaintiff's Amended Complaint should be dismissed.

## IV.    CONCLUSION

Therefore, for the reasons discussed herein, the Amended Complaint should be dismissed.


                                        THE DEFENDANT
                                        YALE UNIVERSITY


                              BY:    /s/ Patrick M. Noonan  (#ct00189)
                                     Patrick M. Noonan
                                     Matthew H. Geelan
                                     Donahue, Durham & Noonan, P.C.
                                     741 Boston Post Road
                                     Guilford, CT 06437
                                     (203) 458-9168

## CERTIFICATION

I hereby certify that, on the above-written date, a copy of the foregoing Motion to Open Entry of Default was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

/s/<br>
Patrick M. Noonan

**UNPUBLISHED DECISIONS**



TIA A. ARMOUR, Plaintiff, v. BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY, Defendant.

Civil No.: PJM 11-2855

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

*2012 U.S. Dist. LEXIS 109831*

August 3, 2012, Decided
August 6, 2012, Filed

**COUNSEL:** [*1] Tia A. Armour, Plaintiff, Pro se, Springfield, VA.

For Board of Education of Prince George's County, Defendant: Abbey Gail Hairston, LEAD ATTORNEY, Thatcher Law Firm LLC, Greenbelt, MD.

**JUDGES:** PETER J. MESSITTE, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** PETER J. MESSITTE

**OPINION**

**MEMORANDUM OPINION**

Tia A. Armour has sued the Board of Education of Prince George's County (the "Board"), alleging violations of *20 U.S.C. § 1681 et seq.* ("Title IX")--not Title VII--for hostile work environment based on sex and retaliation, as well as common law claims of negligent supervision and retention and intentional infliction of emotional distress.

The Board has filed a Motion to Dismiss, or in the alternative, for Summary Judgment [Docket No. 12]. Armour filed no opposition.[1] Because the Board has submitted and cited to evidence outside the four corners of the Complaint, the Court will consider the pending motion as a Motion for Summary Judgment.[2] *See FED. R. CIV. P. 12(d)*; *56(a)*. For the reasons that follow, the Board's Motion for Summary Judgment will be GRANTED.

1   Although Armour was initially represented by counsel, she is now instead proceeding *pro se*. Upon the withdrawal of counsel, on March 2, 2012, the Court alerted Armour to [*2] the pendency of the Board's Motion and gave her an additional 60 days to respond, warning that a failure to do so would lead the Court to treat the Motion as unopposed. Despite this lengthy extension, plus three additional months beyond that, Armour has filed no response.

2   The Board has submitted various pieces of documentary evidence in support of its Motion for Summary Judgment, including personnel documents, formal grievances and reports, state court litigation documents, and assorted correspondence. Armour has submitted only her Amended Complaint, with no supporting documentation. Thus, the Court's recitation of the factual background is drawn exclusively from the Board's submitted documentary evidence.

**I.**

On January 20, 2011, Armour, who had been a

2012 U.S. Dist. LEXIS 109831, *2

Prince George's County Public School employee since April 2008, began working at John Hanson Montessori School in the vice principal's office.[3] On February 16, 2011, she filed a Discrimination or Harassment Incident Report pursuant to Administrative Procedure 4170 (the "Report"), alleging that the vice principal, Linda Burgess, had generally harassed her and created an intimidating and hostile work environment.

> 3   This new assignment followed [*3] Armour's return from an extended sick leave of more than two years and her subsequent filing of an EEOC complaint against the Board for discrimination in violation of the Americans with Disabilities Act.

In the Report, Armour complained of three specific incidents that had supposedly occurred in the preceding days. First, on February 9, Burgess allegedly witnessed Armour attempting to control a young student who was exhibiting major disruptive behavior, had urinated on himself, and was damaging property. Instead of offering to help or taking charge as the administrator, however, Burgess exited the room, leaving Armour to deal with the situation alone. Second, on February 15, Burgess allegedly assigned Armour to cover "in-school suspension" without providing the standard documentation, which would have alerted Armour to the assigned students' disciplinary issues. Armour complained that Burgess "humiliated" her by interrupting her when she was instructing the students on the in-school suspension procedures with contradictory (and incorrect) information. Third, on February 16, after Armour sent an email to Burgess detailing her complaints and alerting her that she would be filing a formal [*4] grievance, Burgess allegedly approached Armour in the media center and ordered her to cover lunch duty. After Armour told Burgess this would mean she had no time to eat lunch herself, Burgess cornered her in the hallway and insisted that she do lunch duty. In addition to identifying these three distinct incidents, the Report also complained of various examples of generalized "administrator to teacher bullying," including that Burgess set her up to have problems with parents and school officials, complained to her co-workers about her and to her about her co-workers, and reprimanded a colleague in front of her with the threat that she would be dealt with the same way.

In addition to the Report, Armour also filed two related workers compensation reports. The first report claimed that on February 9, 2011, a student threw a paper weight that hit the left side of Armour's head, causing unspecified injuries. The second report claimed that on February 16, 2011, Burgess used the heel of her hand to slam Armour's wrist into a table, causing unspecified injuries.

On February 17, 2011, one day after she filed the Report, Armour met with Pamela Harris, the Equity Assurance Officer, to discuss it. [*5] Armour told Harris that Burgess had threatened her by saying "let me go and get my piece so I can end you;" Armour understood "piece" to mean "gun" and did not feel safe going back into the building. During the meeting, Armour confirmed that Sherra Chapelle, the principal, was usually supportive, but that she was not in the building when Burgess threatened her. Armour told Harris that she had alerted school security of the incident and had agreed to return to school after they assured her that it was safe. During the meeting, Armour and Harris concluded that the allegations did not present a cause of action under Administrative Procedure 4170 or Title VII, and Harris agreed to withdraw her Report. They also discussed that Armour would continue working with Helen Coley, the Area Assistant Superintendent, and the staff in the Labor Relations Office to address her safety concerns.

On February 28, 2011, Armour obtained a Temporary Peace Order against Burgess in the Prince George's County District Court. On March 7, 2011, she voluntarily dismissed the Temporary Peace Order.

On September 12, 2011, Armour was reassigned to teach second grade at the J. Frank Dent Elementary School. On September [*6] 19, Armour sent an email to Elisabeth Davis, a compliance officer, alleging that the principal there, Theresa Ware, was discriminating against her because of her disability and was attempting to "railroad" her and set her up because of her previous complaints of violations of the American with Disabilities Act. Davis responded by sending her a report to fill out and offering to meet with her to discuss her allegations. That same day, Armour filed a complaint in Prince George's County District Court, alleging that Ware verbally and physically attacked her, told her to "get her crippled ass out of [her] school," and threatened to "make her pay for going to the D.A. on Linda Burgess." The court issued an Interim Peace Order against Ware, which was dismissed the next day when Armour failed to appear.

2012 U.S. Dist. LEXIS 109831, *6

Armour filed the instant lawsuit on October 5, 2011.[4] In her Amended Complaint, Armour asserts for the first time that Burgess's harassment was sexual in nature. Specifically, Armour alleges that Burgess made sexual contact, which Armour reported as sexual harassment to Chappelle, Coley, and Harris. Armour alleges that Chappelle responded only by saying that Burgess should "stay in her lane," [*7] and that Coley and Harris failed to respond at all. Armour also adds allegations of sexual harassment and assault to her account of the incidents that allegedly occurred on February 9 and 16, none of which appear in her Report filed on February 16 or in other documents in the record. Specifically, Armour alleges that on February 9, when she was controlling the disruptive child, Burgess conditioned an offer of help on a sexual proposition. Further, she alleges that on February 16, when Burgess approached her in the media room, Burgess touched her breast, inner thigh, and vaginal area. When Armour told her to stop, Burgess slammed her hand into Armour's wrist. Then, when Burgess cornered her in the hallway, Burgess sexually propositioned Armour again, and when Armour refused, Burgess threatened to get her "piece" and end her. Finally, the Amended Complaint alleges for the first time that Ware's threats referenced Armour's claims of sexual harassment against Burgess.

> 4   No Title VII claim was filed with the Equal Employment Opportunity Commission regarding these incidents, which would explain why the suit has been filed pursuant to Title IX, which has no requirement of exhaustion of administrative [*8] remedies.

On October 26, 2011, Armour submitted a written resignation, citing her medical condition as the reason.

## II.

Under *Rule 56(a)*, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. *FED. R. CIV. P. 56(a)*; *see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must

'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003)* (alteration in original) (quoting *FED. R. CIV. P. 56(e)*). In considering a motion for summary judgment, the Court must "draw all justifiable inferences in favor of the nonmoving party." *Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520, 111 S. Ct. 2419, 115 L. Ed. 2d 447 (1991)* (citing *Anderson, 477 U.S. at 255*). The court must, however, also abide by the "affirmative [*9] obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat, 346 F.3d at 526* (internal quotation marks omitted) (quoting *Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993)*, and citing *Celotex Corp, 477 U.S. at 323-24*).

Summary judgment is appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" *Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993)*; *see also FED. R. CIV. P. 56(e)(3)* ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by *Rule 56(c)*, the court may . . . grant summary judgment if the motion and supporting materials--including the facts considered undisputed-- show that the movant is entitled to it."). "[T]he court, in considering a motion for [*10] summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Custer, 12 F.3d at 416*; *see also Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 409 n.8 (4th Cir. 2010)*.

## III.

Armour asserts claims of sex-based hostile work environment and retaliation under Title IX, which provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." *20 U.S.C. § 1681(a)*. Title

IX creates an implied private right of action, which "extends to employment discrimination on the basis of gender by educational institutions receiving federal funds." *Preston v. Com. of Va. ex rel. New River Cmty. Coll., 31 F.3d 203, 206 (4th Cir. 1994) (citing Cannon v. Univ. of Chicago, 441 U.S. 677, 99 S. Ct. 1946, 60 L. Ed. 2d 560 (1979); North Haven Bd. of Educ. v. Bell, 456 U.S. 512, 102 S. Ct. 1912, 72 L. Ed. 2d 299 (1982))*. In evaluating a sex discrimination claim under Title IX, courts look to Title VII jurisprudence for guidance. *See Jennings v. Univ. of North Carolina, 482 F.3d 686, 695 (4th Cir. 2007).*

The [*11] threshold issue for any Title IX claim is whether there has been discrimination based on sex. A claim of hostile work environment is only actionable under Title IX if the alleged hostility amounts to sex-based discrimination. *See Jennings, 482 F.3d at 695; see also Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 80, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)* ("[T]he critical issue [in a sexual harassment claim under Title VII] is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."). Similarly, a claim of retaliation under Title IX only lies where the claimant suffers "retaliation based on the filing of a complaint of gender discrimination." *Preston, 31 F.3d at 206 n.2.*

No evidence in the record supports Armour's claim of hostile work environment based on sex. To establish this claim, Armour would have to present evidence that (1) she was at an educational institution receiving federal funds, (2) she was subjected to harassment *based on her sex*, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment, and (4) there is a basis for imputing liability to the Board. *See Jennings, 482 F.3d at 695;* [*12] *see also Hoyle v. Freightliner, LLC, 650 F.3d 321, 331 (4th Cir. 2011)* (setting forth criteria for establishing hostile work environment based on sex under Title VII). Despite ample contemporaneous documentation of Burgess's offending conduct, nowhere in the record, except in the Amended Complaint, is there any mention of discrimination based on sex. It is particularly striking that Armour reported, in detail, the offending nature of the incidents that allegedly occurred on February 9 and 16 but included none of the charges of sexual harassment and assault that for the first time surface in her Amended Complaint.[5] While the evidence in the record does

suggest that Burgess may have bullied, intimidated, and physically threatened and assaulted Armour, all of which might support causes of action other than Title IX (or Title VII claims), nothing in the record warrants an inference that Burgess created a hostile work environment or otherwise discriminated against Armour on the basis of her sex under Title IX.

> 5   The absolutely critical and dispositive legal proposition in this case is that allegations set forth in the pleadings are insufficient to create a genuine dispute of material fact, [*13] without citation to "particular parts of materials in the record." *FED. R. CIV. P. 56(c)(1)(A)*. Since Armour's only submission is her Amended Complaint (the original Complaint having been superceded), she fails to satisfy this requirement.

Because there is no evidence that Armour complained of (or even suffered from) any discrimination based on sex, she is unable to sustain a claim of retaliation under Title IX.[6] *Cf. Jackson, 544 U.S. at 174* ("[W]hen a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX.") (emphasis in original); *see also Preston, 31 F.3d at 206 n.2.*

> 6   Indeed, the documentation relating to Ware's allegedly retaliatory actions refers only to discrimination based on disability and retaliation for making claims under the Americans with Disabilities Act.

Armour's common-law claims fare no better.

To establish a prima facie case for intentional infliction of emotional distress, a plaintiff must demonstrate intentional or reckless conduct that was extreme and outrageous as well as a causal connection to severe emotional distress. *See Harris v. Jones, 281 Md. 560, 566, 380 A.2d 611, 614 (1977).* [*14] "[T]he tort is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby, 326 Md. 663, 670, 607 A.2d 8, 11 (1992).* "[W]orkplace harassment . . . almost never rises to the level of outrageousness, and almost never results in such severely debilitating emotional trauma, as to reach the high threshold invariably applicable to a claim of intentional infliction of emotional distress under Maryland law." *Arbabi v. Fred*

2012 U.S. Dist. LEXIS 109831, *14

*Meyers, Inc., 205 F. Supp. 2d 462, 466 (D. Md. 2002).* Burgess's conduct, as reflected in the record, was not so extreme and outrageous as to satisfy the high threshold required by Maryland law. Moreover, there is no evidence that Armour suffered any severe and debilitating emotional distress. Again, the Court has nothing from Armour but her Amended Complaint, which, as a matter of law, cannot sustain her factual contentions. Thus, this claim fails.

To establish a claim for negligent hiring or retention, a plaintiff must show that he suffered from a tortious act and that the employer of the individual who committed the tort acted negligently towards the plaintiff (i.e. owed and breached [*15] a duty thereby causing harm) in hiring or retaining that individual. *See Horridge v. St. Mary's Cnty. Dept. of Soc. Servs., 382 Md. 170, 180, 854 A.2d 1232, 1237 (2004)* (citing *Norfolk & Western Railroad Co. v. Hoover, 79 Md. 253, 262, 29 A. 994, 995*

*(1894)).* Because Armour presents no evidence establishing a claim for any underlying tortious act, let alone any negligence on the Board's part in hiring or retaining any employee, this claim also must fail.

**IV.**

For the foregoing reasons, the Board's Motion for Summary Judgment [Docket No. 12] is **GRANTED.**

A separate Order will **ISSUE.**

/s/

**PETER J. MESSITTE**

**UNITED STATES DISTRICT JUDGE**

**August 3, 2012**



LexisNexis®

JOHN DOE, MARY DOE, AND JAMES DOE, Plaintiffs v. THE UNIVERSITY OF THE SOUTH,

Case No. 4:09-cv-62

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

*687 F. Supp. 2d 744; 2009 U.S. Dist. LEXIS 95410*

October 13, 2009, Decided
October 13, 2009, Filed

**SUBSEQUENT HISTORY:** Motion granted by, Motion denied by, Partial summary judgment denied by, Summary judgment granted, in part, summary judgment denied, in part by, Claim dismissed by *Doe v. Univ. of the S., 2011 U.S. Dist. LEXIS 35166 (E.D. Tenn., Mar. 31, 2011)*

**COUNSEL:** [**1] For John Doe, Mary Doe, James Doe, Plaintiffs: Charles B Wayne, PRO HAC VICE, DLA Piper LLP, Washington, DC; Michael R Campbell, Campbell & Campbell, Chattanooga, TN.

For The University of the South, Defendant: David A Love, Rosemarie L Bryan, Chambliss, Bahner & Stophel, PC, Chattanooga, TN.

**JUDGES:** HARRY S. MATTICE, JR., UNITED STATES DISTRICT JUDGE.

**OPINION BY:** HARRY S. MATTICE, JR.

**OPINION**

[*749] MEMORANDUM AND ORDER

The following are presently before the Court: (1) Defendant University of the South's (the "University")

Partial Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim [Court Doc. 10]; (2) the parties' response to the Court's Show Cause Order of September 1, 2009 [Court Doc. 30]; and (3) Defendant's Objection to Magistrate Judge Lee's Memorandum and Order of August 7, 2009 granting Plaintiffs' Motion to Proceed Under Pseudonyms and for Protective Order. [Court Doc. 25.]

Defendant seeks to dismiss Plaintiffs' claims which are based upon Title IX of the Education Amendments of 1972, *20 U.S.C. §§ 1681-88* ("Title IX") and the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act, *20 U.S.C. § 1092(f)* (the "Clery Act."); (Court Doc. 1, Pls.' Compl. Count [**2] III and Count IV). In addition, on September 1, 2009, the Court entered a Show Cause Order, which required the parties to brief the "question of whether Plaintiffs have alleged sufficient facts that would establish that Defendant had explicitly or implicitly entered into a contractual or quasi-contractual relationship with James Doe and Mary Doe" and have standing to pursue such claims against the University. [Court Doc. 30, Show Cause Order at 1.] Finally, the University objected to Magistrate Judge Susan Lee's Memorandum and Order granting Plaintiffs' Motion to Proceed Under Pseudonyms and for Protective Order on the grounds that Judge Lee incorrectly applied the legal standard governing this issue. (Court Doc. 25, Def.'s Object. to R&R at 1).

687 F. Supp. 2d 744, *749; 2009 U.S. Dist. LEXIS 95410, **2

For the reasons explained below, Defendant's Motion for Partial Summary Judgment will be **GRANTED** and Counts III [*750] and IV of the Complaint will be **DISMISSED WITH PREJUDICE**. Plaintiffs James Doe and Mary Doe's Contractual and Quasi-Contractual Claims against the University [Counts I, II, XII] are will also be **DISMISSED WITH PREJUDICE**. The University's Objection to United States Magistrate Judge Susan K. Lee's Memorandum and Order granting Plaintiffs' [**3] Motion to Proceed Under Pseudonyms and for Protective Order [Court Doc. 25] will be **OVERRULED**.

## I. LEGAL STANDARD

*Federal Rule of Civil Procedure 12(b)(1)* provides for the dismissal of a complaint over which the Court lacks subject matter jurisdiction. "Where subject matter jurisdiction is challenged pursuant to *12(b)(1)*, the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Michigan S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Assn., 287 F.3d 568, 573 (6th Cir. 2002)*. Challenges to subject matter jurisdiction may be either facial or factual. *United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994); Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990)*. A facial challenge is a challenge to the sufficiency of the pleading. *Ritchie, 15 F.3d at 598; Ohio Nat'l, 922 F.2d at 325*. When reviewing a facial challenge, the Court must accept as true all well-pleaded factual allegations in the complaint and construe the complaint in the light most favorable to the nonmoving party. *Ritchie, 15 F.3d at 598; Ohio Nat'l, 922 F.2d at 325*. In contrast, a factual challenge is "not a challenge to the sufficiency of the pleading's allegations, [**4] but a challenge to the factual existence of subject matter jurisdiction." *Ritchie, 15 F.3d at 598*. When reviewing a factual challenge, no presumption of truthfulness applies to the factual allegations of the complaint, and the Court must weigh the conflicting evidence to determine whether subject matter jurisdiction exists. *Id.; Ohio Nat'l, 922 F.2d at 325*. The Court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing" to resolve disputed jurisdictional facts. *Ohio Nat'l, 922 F.2d at 325*.

The purpose of *Rule 12(b)(6)* is to permit a defendant to test whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is true. *Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993)*.

To survive a motion to dismiss under *12(b)(6)*, plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007)* (citing *Bell Atlantic v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007))*. "[A] plaintiff's obligation to provide the grounds of his [**5] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

The Court must determine not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support his claims. *Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)*. In making this determination, the Court must construe the complaint in the light most favorable to plaintiff and accept as true all well-pleaded factual allegations. *Mixon v. Ohio, 193 F.3d 389, 400 (6th Cir. 1999)*. The Court need not accept as true mere legal conclusions or unwarranted factual inferences. *Id.*

Recently, the Supreme Court confirmed that *Rule 12(b)(6)* must be read in conjunction with *Rule 8(a)*, which requires "a short and plain statement of the claim showing that the pleader is entitled [*751] to relief." *Twombly, 127 S. Ct. at 1974; Fed. R. Civ. P. 8(a)(2)*. A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly, 127 S. Ct. at 1974; see also Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007)*. Although material [**6] allegations in the complaint must be accepted as true and construed in the light most favorable to the nonmoving party, a court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Id.*

"Two working principles underlie [the Supreme Court's"] decision in *Twombly.*" *Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-1951, 173 L. Ed. 2d 868 (2009)*. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (internal citations and quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (internal citations omitted). While "*Rule*

Case 3:12-cv-01462-WWE    Document 26-1    Filed 05/15/14    Page 17 of 27

Page 3

687 F. Supp. 2d 744, *751; 2009 U.S. Dist. LEXIS 95410, **6

8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.*

"Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal, 129 S. Ct. at 1949-1951.* "Determining whether a complaint states a plausible claim for relief will ... be a [**7] context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (internal citations and quotations omitted). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'shown' - that the pleader is entitled to relief." *Id.* (internal citations and quotations omitted).

## II. FACTS

Following an incident on August 30, 2008, a female university student (Complainant) accused Plaintiff John Doe of sexually assaulting her. (Court Doc. 1, Compl. PP 31-32, 53, 62.) On September 19, 2008, following a disciplinary hearing, the University found that Plaintiff John Doe, an undergraduate at the University, had sexually assaulted the Complainant in the early morning of August 30, 2008 and, thereby, had violated the University's Sexual Assault Policy and Procedures. (*Id.* PP 10, 31-62.) The University presented Plaintiff with two options for punishment: (1) a one semester suspension with the sexual assault on his student record; or (2) withdrawal from the University for two semesters. (*Id.* PP 53, 62). The University imposed additional conditions for John Doe's [**8] return under either option, including re-application to, and approval by, the University Admission's Committee. (*Id.*) Plaintiff John Doe withdrew from the University with the possibility of returning in the fall of 2009. (*Id.* P 63.) Plaintiff John Doe ultimately decided to not seek re-admission to the University. (*Id.*)

On June 30, 2009, Plaintiffs filed the instant action against the University. The Complaint contains twelve counts, alleging that the University committed a number of statutory, contractual, and tort violations in connection with the University's investigation of the charges made against Plaintiff John Doe as well as the University's disciplining of Plaintiff John Doe.

**A. Overview of the University's Procedures**

**Concerning Sexual Assault Allegations**

The University's Sexual Assault Policies and Procedures provide the following [*752] mechanisms for the University's investigation and adjudication of sexual assault claims. Under this policy, any student who wishes to file a sexual assault complaint against another student may: (1) report the incident with a request that "no action" be taken; (b) report the incident with a request that an "information action" be taken; (c) report the [**9] incident and request that the respondent agree to have no contact with the complainant for a specified period of time; or (d) report the incident and "file a formal charge of sexual assault" with one of the deans of students. (Compl. P 29.)

When a complainant files a formal charge of sexual assault against another student, the University's Sexual Assault Policies and Procedures mandate the following:

> (1) The Dean of Students will inform the respondent of the charges pending against him or her typically within five class days of learning that a formal charge is being pursued:

> (2)The complainant and respondent are each entitled to select a designated "Consultant" who will serve as his or her "Hearing Advisor," who is familiar with the formal processes for hearing cases of sexual assault and is knowledgeable about: (I) the seriousness of the charge(s), procedure, and possible penalties if found responsible; (ii) the University's conduct standard for sexual assault; (iii) the University's resources available to the respondent; and (iv) the option of informing parents and guardians of the matter:

> (3) The Dean of Students is tasked with appointing an investigator within three days of receiving [**10] a formal charge of sexual assault.

> (4) The investigator interviews each of the students involved in the alleged incident as well as any possible witnesses, and, if possible, obtains a written statement from each witness. The

687 F. Supp. 2d 744, *752; 2009 U.S. Dist. LEXIS 95410, **10

investigation portion of the process typically takes five to ten class days.

(5) The complainant and the respondent are each permitted to submit a written statement that sets forth facts in support of their respective positions. Each is to have the opportunity to work with his or her Consultant/Hearing Advisor in the preparation of his or her statement, and, if desired, to consult with his or her patents and/or an attorney. During the period before the hearing, the complainant and the respondent are each permitted to invite a member of the college community (faculty, staff, or student) to speak to [his or her] character during the official hearing. The witness will only be present at the hearing during his or her statement.

(6) The respondent will be notified of the actual date and time of the hearing at least 24 hours prior to the hearing.

(7) The hearing is presided over by the Faculty Discipline Committee (the "Committee"), which is composed of the Dean of Students [**11] and four faculty members. The Dean of Students is the Chair of the Committee. Three members of the Committee constitute a quorum and must be present at all stages of a hearing.

(8) The complainant and the respondent may be accompanied to the hearing by his or her respective Consultant/Hearing Advisor. During the hearing, the Consultant/Hearing Advisor may confer with his advisee, but may not address the Committee. A respondent's parents or attorney may not attend the hearing. "[A]t the beginning of the hearing," the complainant and the respondent will each "have an opportunity to see the other reports [i.e., witness statements]." The complainant and the respondent are not permitted to be in the hearing room [*753] at the same time. The Dean of Students fulfills the role of prosecutor at the hearing. The hearing is not recorded "unless special permission is requested and granted by the chair," i.e., the Dean of Students.

(9) "[P]rior to the hearing," the investigator reports the results of his investigation to the Committee, including the written statements of witnesses, if any. The Committee then reviews the written statements of the complainant and the respondent. The character witnesses give [**12] oral testimony, as do the complainant and the respondent. "Any witnesses that have information pertaining to the incident will be given a chance to [testify]." The Committee is free to question any witness and to recall any witness for additional questioning.

(10) After the evidentiary phase concludes, the Committee, including the Dean of Students, holds a "closed meeting" and determines whether the respondent is guilty of the charges. The evidentiary standard is "a preponderance of the evidence," which the University defines as a "51% certainty that the respondent is responsible for a violation of the sexual assault policy." If the decision is adverse to the respondent, the Committee members (but not the Dean of Students) recommend a proposed punishment to the Dean of Students, "who has authority to accept, modify, or reject the recommendation of the [C]ommittee." The Dean of Students thus acts as the prosecutor, fact finder, and sentencing judge. Finally, the Dean of Students notifies the respondent of the Committee's decision and the punishment to be imposed, if any.

(11) The Sexual Assault Policies and Procedures do not prescribe an appellate process. A respondent found guilty of [**13] sexual assault has the right to appeal the decision and punishment imposed under the appeals process set forth in the general student disciplinary system procedures. That appeal lies with the Vice Chancellor of the University,

Case 3:12-cv-01462-WWE   Document 26-1   Filed 05/15/14   Page 19 of 27

Page 5
687 F. Supp. 2d 744, *753; 2009 U.S. Dist. LEXIS 95410, **13

who is the chief executive officer and "the official ultimately responsible for the order and discipline of the University."

Compl. PP 26-30.

## B. Plaintiff John Doe's Hearing

In this instance, the Complainant filed a formal charge accusing Plaintiff John Doe of sexual assault pursuant to University's Sexual Assault Policies and Procedures. (Compl. P 31.) After the formal charge was filed, various administrators for the University met and investigated the Complainant's allegations. (Id. PP 33, 34.) At 11:00 p.m. on September 17, 2008, Plaintiff John Doe was informed that Eric E. Hartman, Dean of Students, wanted to see him first thing in the morning. (Id. P 35.) On the morning of September 18, 2008, Dean Hartman met with Plaintiff John Doe. (Id.) Dean Hartman informed Plaintiff John Doe that he was accused of sexual assault, the basis of the charge, the names of individuals who provided statements, witnesses, and that the disciplinary hearing was scheduled for September [**14] 19, 2008. (Id. P 37.)

Plaintiffs also allege that Dean Hartman informed John Doe of the following: (1) an investigator had gathered all the relevant information; (2) Hartman and the Committee would provide all the witnesses; (3) the only witness Doe could bring was a character witness who could testify as to Doe's morals and his standing in the community; and (4) Doe needed to provide a written statement of his defense as soon as possible. (Id. P 38) Although Dean Hartman recommended that John Doe use David L. Spaulding, Ph.D., the Director of the University Counseling Service as his representative at this hearing, he discouraged Doe from bringing any other supporters [*754] to this hearing. (Id. PP 38, 41.) Plaintiff did not inform his parents about the hearing nor did he consult an attorney, but did submit a written statement to Dean Hartman on the morning of September 19, 2008. (Id.)

On September 19, 2008, Doe arrived at the disciplinary hearing with his character witness, an "assistant proctor" (a resident advisor) from his dormitory. (Compl. P 42.) The hearing investigator asked John Doe to provide more specifics about some of the times in his written statement. (Id. P 42.) Dean Hartman [**15] provided Doe a copy of the Complainant's written statement before he attended the hearing. (Id.) John Doe and Dr. Spaulding were not permitted to attend any

portion of the hearing other than when Doe was testifying and being questioned by panel. No recording or transcript was made of the hearing. (Id. P 43.) Plaintiffs allege, upon information and belief, that the hearing panel heard oral testimony from the hearing investigator, the Complainant, John Doe, and the respective character witnesses for the Complainant and John Doe. (Id. P 45.) Plaintiffs also allege, upon information and belief, the panel reviewed a police report of the alleged sexual assault as well as the hospital records of the Complainant's examination on August 30, 2008. (Id.)

The hearing panel consisted of Dean Hartman and three other members of the Faculty Discipline Committee. (Compl. P 44.) Plaintiffs allege, on information and belief, that none of these individuals were trained in "adjudication; in the law; in weighing evidence; in what type of conduct constitutes sexual harassment or sexual assault; or in the relevance or irrelevance of evidence in the alleged sexual assault setting." (Id.) "In addition to chairing [**16] the Committee, Dean Hartman also served as the prosecutor during this hearing." (Id. P 44.)

The hearing, which lasted between five and six hours, ended with Dean Hartman's statement that: (1) he and the rest of the hearing panel members would deliberate and decide whether the charges had been proven; and (2) if the charges were proven, the three faculty members of the hearing panel would recommend a punishment to Dean Hartman, who was free to accept, reject, or modify their recommendations. (Compl. at. P 51.)

One hour after the conclusion of the hearing, Dean Hartman informed John Doe that he and the other panel members had deliberated and that a majority had concluded that he had committed Category 1 sexual assault. (Compl. P 52.) Dean Hartman informed John Doe of two punishment options: (1) suspension for the current semester, but he would be allowed to re-enroll in the University in January 2009 with the sexual assault finding as part of his record; or (2) "withdrawal" from the University, with the option to return in the Fall of 2009. Under either option, the University imposed additional conditions for John Doe's return, including re-application to, and approval, by the Admissions [**17] Committee. (Id. P 53.)

John Doe was informed that he had a right to appeal this decision to the Vice Chancellor, but was cautioned

Case 3:12-cv-01462-WWE  Document 26-1  Filed 05/15/14  Page 20 of 27

Page 6

687 F. Supp. 2d 744, *754; 2009 U.S. Dist. LEXIS 95410, **17

that the Vice Chancellor could increase the punishment to a multiple-year suspension or an expulsion. (Compl. P 54.) Plaintiffs also allege that Dean Hartman informed Plaintiff that the Complainant might pursue criminal charges against him if he were to appeal this decision. *(Id.)* Dean Hartman then informed John Doe that he had a few days to choose the punishment but that he was required to leave campus by Sunday September 21, 2008. Plaintiffs also allege that John Doe was instructed to destroy all written materials he had related to the charge and hearing. *(Id.* P 55.) Acting in [*755] accordance with the instructions, John Doe destroyed all such written materials and left campus on September 21, 2008. *(Id.* P 56.)

John Doe appealed the Committee's decision by letter dated September 26, 2009. (Compl. P 59.) He contended that: (1) he did not have sufficient notice of the hearing; and (2) it was evident that the charge was not properly investigated given that the investigator first interviewed him shortly before the start of the hearing. *(Id.)* On October 3, 2008, the [**18] University's Vice Chancellor denied this appeal by letter and affirmed Dean Hartman's findings and actions. *(Id.* P 60-62.) John Doe withdrew from the University with a possibility of returning in the Fall of 2009, but he ultimately decided not to seek re-admission to the University. *(Id.* P 63.)

### III. ANALYSIS

#### A. What Is and What Is Not Before the Court

This case comes before this Court in limited posture. The Plaintiffs' claims against the University are grounded primarily upon the manner in which the University officials conducted the process leading to its conclusion that the Plaintiffs had violated the University's Code of Conduct and its imposition of sanctions. Plaintiffs claim that the University's actions violated Title IX as well as the Clery Act and also assert various contract and tort claims against the University. *See 20 U.S.C. §§ 1681-1688; 20 U.S.C. § 1092;* Compl. PP 66-175. Accordingly, "[t]his Court's review is substantially circumscribed; the law does not allow this Court to retry the University's disciplinary proceeding." *Gomes v. Univ. of Maine Sys., 365 F. Supp. 2d 6, 14 (D. Maine 2005).*

This is not a lawsuit between the Complainant and the Plaintiffs. This Court is [**19] not asked to make an independent determination as to what happened between the Plaintiff John Doe and the Complainant on August

30, 2008. The Court therefore expresses no opinion as to whether a sexual assault occurred, whether any such acts were consensual, or who, as between John Doe and the Complainant is credible. In short, the instant lawsuit does not call for a judicial determination either in favor or against John Doe's claims or in favor or against the Complainant, regarding the merits of her claims.

#### B. Plaintiffs' Title IX Claims Against the University

Counts III and IV of Plaintiffs' Complaint allege that "the University's student disciplinary process, including the Sexual Assault Policies and Procedures, is, as implemented, contrary to Title IX" and that the University's actions in adjudicating the Complainant's claims against John Doe resulted in substantial damage and loss, including but not limited to: mental anguish; severe emotional distress; injury to reputation; past and future economic loss; deprivations of due process; loss of educational and athletic opportunities; and loss of future career prospects. (Compl. PP 135-138.)

The University contends that Plaintiffs have [**20] failed to state a claim under Title IX and thus are not entitled to any relief under this statute. Plaintiffs contend that the University's actions violated the regulations issued by the United States Department of Education, which require each school receiving Title IX funds to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student ... complaints alleging any action which would be prohibited by Title IX or its regulations. (Court Doc. No 18, Pls.' Resp. Br at 11.) Plaintiffs also contend such regulations require that "a school's procedures must 'accord[] due process to both parties involved ...'' *(Id.)* Plaintiffs [*756] claim the Title IX claim to recover damages and declaratory relief will contribute to the overall public policy goals sought to be advanced by Title IX. *(Id.)*

Title IX states in pertinent part, "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance..." *20 U.S.C. § 1681(a).* "Title IX claims against universities arising from disciplinary hearings" are analyzed [**21] under the "erroneous outcome" standard, "selective enforcement" standard, "deliberate indifference" standard, and "archaic assumptions" standard. *Mallory v. Ohio Univ., No. 01-4111, 76 Fed. App'x 634, 638 (6th*

Case 3:12-cv-01462-WWE   Document 26-1   Filed 05/15/14   Page 21 of 27

Page 7

687 F. Supp. 2d 744, *756; 2009 U.S. Dist. LEXIS 95410, **21

*Cir. Sept. 11, 2003)* (internal citations omitted).

Under the "erroneous outcome" or "selective enforcement" standards, a plaintiff must demonstrate that the conduct of the university in question was motivated by a sexual bias. *Id.* Under the "deliberate indifference" standard, a plaintiff must "demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct." *Id.* Finally, under the "archaic assumptions" standard, a plaintiff seeking equal opportunities has "the burden in establishing that a university's discriminatory actions resulted 'from classifications based upon archaic assumptions." *Id.*

**1. Plaintiffs Have Failed to Plead Facts Sufficient to Support a Finding Under the "Erroneous Outcome" Standard**

Plaintiffs have not pled sufficient facts to support a finding under the "erroneous outcome" standard, namely that the outcome of the University's disciplinary proceeding was [**22] erroneous because of a sexual bias. Plaintiffs do contend that "the University's actions in the investigation and adjudication of the allegations against [John] Doe were wrong, willful, intentional, reckless, in clear violation of Title IX's requirements, and constituted an effort to achieve a predetermined result: a finding that Doe had committed a Category 1 sexual assault." Compl. P 137.

This contention fails to allege, however, that the University's actions against John Doe were motivated by sexual bias or that the University's disciplinary hearing process constitutes a "pattern of decision-making" whereby the University's disciplinary procedures governing sexual assault claims is "discriminatorily applied or motivated by a chauvinistic view of the sexes." *Mallory, 76 Fed. App'x at 640* citing *Yusuf v. Vassar College, 35 F.3d 709, 715 (2d Cir. 1994)* (noting "one case by an individual who was subjectively dissatisfied with a result does not constitute a 'pattern of decision making,' referred to in *Yusuf* as a basis for finding bias."). Thus, the Court finds that Plaintiffs have failed to plead sufficient facts to support a finding under the "erroneous outcome" standard for Title IX [**23] claims.

**2. Plaintiffs Have Failed to Plead Facts Sufficient to Support a Finding Under the "Selective Enforcement" Standard**

Plaintiffs have also failed to plead sufficient facts to support a finding under the "Selective Enforcement" standard of Title IX. "To support a claim of selective enforcement, [Plaintiffs] must demonstrate that a female was in circumstances sufficiently similar to [John Doe's] and was treated more favorably by the University." *Mallory, 76 Fed. Appx. at 641* citing *Curto v. Smith, 248 F. Supp. 2d 132, 146-147 (N.D.N.Y. 2003)* (dismissing a Title IX claim under a *Yusuf* analysis for failure to state a selective enforcement claim where [*757] academically-expelled female sought to compare more favorable treatment of males who have been dismissed due to misconduct.) Plaintiffs have failed to plead facts or provide the Court with any evidence that the University's actions against John Doe were motivated by his gender and that a similarly situated woman would not have been subjected to the same disciplinary proceedings. Thus, the Court finds that Plaintiffs have failed to plead facts to support a finding under the "selective enforcement" standard for Title IX claims.

**3. Plaintiffs [**24] Have Failed to Plead Facts Sufficient to Support a Finding Under the "Deliberate Indifference" or "Archaic Assumptions" Standards**

Plaintiffs have also failed to plead facts sufficient to support a finding under the "Deliberate Indifference" or "Archaic Assumptions" standards of Title IX. Plaintiffs' Complaint does not contain any allegation that the University's actions were based upon "archaic assumptions" regarding sex or gender. Thus, the Court finds that Plaintiffs' Title IX claim does not encompass the "archaic assumptions" standard.

Plaintiffs' Complaint could be arguably construed to encompass a "deliberate indifference" Title IX claim. Under the "deliberate indifference" standard, Plaintiffs have the burden to "demonstrate that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct." *Mallory, 76 Fed. App'x at 638.* The "deliberate indifference" must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it. *Patterson v. Hudson Area Sch., 551 F.3d 438, 446 (6th Cir. 2009).* "[A] Plaintiff may demonstrate a defendant's deliberate indifference to [**25] discrimination 'only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* (internal citations omitted). Thus, under this standard,

Case 3:12-cv-01462-WWE   Document 26-1   Filed 05/15/14   Page 22 of 27

Page 8

687 F. Supp. 2d 744, *757; 2009 U.S. Dist. LEXIS 95410, **25

The recipient is not required to "remedy" sexual harassment nor ensure that students conform their conduct to certain rules, but rather, "the recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable." The deliberate indifference standard "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." The standard does not mean that recipients must expel every student accused of misconduct. Victims do not have a right to particular remedial demands. Furthermore, courts should not second guess the disciplinary decisions that school administrators make.

*Vance v. Spencer Cty. Pub. Sch. Dist., 231 F.3d 253, 260 (6th Cir. 2000)* (internal citations omitted).

In the instant case, Plaintiffs allege that the University's Sexual Assault Policies and Procedures, as written and enforced, violate Title IX. Specifically, Plaintiffs contend [**26] that the University's "student disciplinary process, including the Sexual Assault Policies and Procedures, violate[] Title IX" because the procedures do not afford "prompt and equitable" due process. Compl. PP 128, 131. Plaintiffs cite a litany of authority which supports the proposition that a plaintiff who is subjected to sexual or gender harassment by a school, college, or university is entitled to initiate a private right of action under Title IX. *See* Pls.' Resp. Br. at 10-13.

The facts pled by Plaintiffs, however, do not contain the critical component of any [*758] Title IX claim necessary to make a finding under the deliberate indifference standard, namely that the University's alleged actions constituted sexual harassment. *See* Compl. PP 132, 137. The Complaint fails to allege any facts to support a finding that the University's actions were at all motivated by John Doe's gender or sex or constituted gender harassment or sexual harassment. *Doe v. Derby Board of Ed., 451 F. Supp. 2d 438, 445 (D. Conn. 2006)* citing *Kelly v. Yale Univ., No. 3:01-cv-1591, 2003 U.S. Dist. LEXIS 4543, [WL] at * 1, *4 (D. Conn. Mar. 26, 2003)*; *Ross v. Corp. of Mercer Univ., 506 F.*

*Supp. 2d 1325, 1346-1350 (M.D. Ga. 2007)* [**27] ("Whether gender-oriented conduct rises to the level of actionable harassment depends on a constellation of surrounding circumstances, expectations and relationships, including, but not limited to, the ages of the harasser and the victim and the number of individuals involved. Notwithstanding the foregoing principles, a single instance of one-on-one peer harassment is likely not actionable under Title IX."). This is a necessary prerequisite for any Title IX claim.

Moreover, the Court finds that Plaintiffs' Title IX allegations must be dismissed because the "misconduct" at issue in the instant case, namely the the University's alleged failure to comply with Title IX regulations promulgated by the United States Department of Education, does not confer a private right of action. [1] Pls.' Br. at 3. Although the U.S. Department of Education and other "[a]gencies generally have authority to promulgate and enforce requirements that effectuate the statute's non-discrimination mandate," the "implied right of action under Title IX" does not provide for the "recovery in damages for violation of those sorts of administrative requirements." *Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291-292, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998).* [**28] Therefore, the legal basis upon which Plaintiffs seek recovery, namely the University's alleged violation of the U.S. Department of Education's guidelines, do not provide for a private right of action under Title IX.

1   The pertinent regulation of the United States Department of Education, promulgated pursuant to Title IX, states that each recipient of federal funds "shall adopt and publish grievance procedures providing for the prompt and equitable resolution of" complaints arising under Title IX and "shall designate at least one employee to coordinate its efforts to comply with and carry out its responsibilities," including the investigation of any complaint. *34 C.F.R. 106.8.*

The United States Department of Education's Office of Civil Rights also published its "Revised Sexual harassment Guidance: Harassment of Students by School Employees, Other Students, Or Third Parties," which provides "principles that a school should use to recognize and effectively respond to sexual harassment of students in its program as a condition of receiving Federal

Page 9

687 F. Supp. 2d 744, *758; 2009 U.S. Dist. LEXIS 95410, **28

financial assistance." *See 66 Fed. Reg. 5512* at I. The relevant portions of the U.S. Department of Education's Office of Civil Rights guidance [**29] provides:

> Schools are required by the Title IX regulations to adopt and publish a policy against sex discrimination and grievance procedures providing for prompt and equitable resolution of complaints of discrimination on the basis of sex.

*See 66 Fed. Reg. 5512 at 14.* The United States Department of Education's Office of Civil Rights guidance also requires schools to adopt sexual assault policies and procedures that:

> Ensure the Title IX rights of the complainant, while at the same time according due process to both parties involved, will lead to sound and supportable decisions. Of course, schools should ensure that steps to accord due process rights do not restrict or unnecessarily delay the protections provided by Title IX to the complainant.

*See 66 Fed. Reg. 5512 at 22.*

Thus, in addition to failing to plead facts to support a viable Title IX claim, Plaintiffs John Doe, James Doe, and [*759] Mary Doe do not have a right to pursue damages against the University. Finally, James Doe and Mary Doe "as parent[s] lack standing to assert a Title IX claim" because John Doe "has attained the age of majority." *Phillips v. Anderson County Bd. of Educ., 259 Fed. App'x 842, 843 (6th Cir. 2008).* [**30] Accordingly, Plaintiffs' Title IX claims against the University will be **DISMISSED WITH PREJUDICE.**

**C. Plaintiffs Request for a Declaratory Judgment Under the Clery Act**

In Count III of the Complaint, Plaintiffs request that the Court invoke declaratory jurisdiction. Specifically, Plaintiffs request that the Court enter a declaratory judgment that the University's Policies and Procedures governing Sexual Assault Allegations violates the Clery Act. The Clery Act mandates, among other things, that all

colleges and universities that accept federal funding adopt police and procedures for on-campus disciplinary action in cases of alleged sexual assault. *20 U.S.C. § 1092(f)(8).* Specifically, the relevant portion of the statute provides:

> Procedures for on-campus disciplinary action in cases of alleged sexual assault, which shall include a clear statement that--
>
> (I) the accuser and the accused are entitled to the same opportunities to have others present during a campus disciplinary proceeding; and
>
> (II) both the accuser and the accused shall be informed of the outcome of any campus disciplinary proceeding brought alleging a sexual assault.

*20 U.S.C. § 1092(f)(8)(A)(ii).*

The Declaratory Judgment Act provides [**31] that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *28 U.S.C. § 2201* (emphasis added). The Supreme Court has indicated that this act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co., 515 U.S. 277, 286, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995).* In passing the act, Congress "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Id. at 288.* District courts are afforded substantial discretion to exercise jurisdiction "in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and fitness of the case for resolution, are peculiarly within their grasp." *Id. at 289.*

In considering whether a district court has properly exercised its discretion in this regard, the United States Court of Appeals for the Sixth Circuit has traditionally focused on the five factors first articulated in *Grand Trunk W. R.R. Co.* [**32] *v. Consol. Rail Co.:*

> . (1) whether the declaratory action would settle the controversy;

687 F. Supp. 2d 744, *759; 2009 U.S. Dist. LEXIS 95410, **32

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata";

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*746 F.2d 323, 326 (6th Cir. 1984)* (formatting altered); *see also Travelers,* [*760]  *495 F.3d at 271; Bituminous Cas. Corp. v. J & L Lumber Co., 373 F.3d 807, 812-13 (6th Cir. 2004); Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 968 (6th Cir. 2000).*

The third and fourth of the above-cited factors have no particular relevance to this case. The Court, however, concludes that the first, second, and fifth factors strongly counsel against this Court exercising its discretion to invoke its declaratory jurisdiction. With respect to the first prong of the Court's inquiry, acceptance of the declaratory action would not settle the underlying controversy [**33] between the parties. In addition to their Clery Act claim, Plaintiffs assert certain contract, quasi-contract, and tort claims against the University. Even if the Court were to conclude that the University's policies and procedures meet the two explicit requirements of the Clery Act, Plaintiffs contract, quasi-contract, and tort claims would remain unresolved.

On a related note, resolving the question of whether the University's policies and procedures violate the Clery Act would not serve a useful purpose in clarifying the issues before the Court. Plaintiffs' Complaint does not allege that the Complainant and John Doe were not informed of the outcome of any campus disciplinary proceeding brought alleging a sexual assault as required by the Clery Act. Plaintiffs, however, do contend that "the University's student disciplinary process, including the Sexual Assault and Polices and Procedures violated the Clery Act in that the timing of the notice of the hearing and the scheduling of the hearing deprived [John] Doe of the same opportunity as [the Complainant] to

have witnesses present at the hearing." Compl. P 133. Even if the Court were to resolve this issue, such a finding would have [**34] no bearing on Plaintiffs' pending contractual and quasi-contractual claims, and would be completely irrelevant to Plaintiffs' tort claims. *See 20 U.S.C. § 1092(f)(14)(A)(i)-(ii)* ("Nothing in this subsection may be construed to--(I) create a cause of action against any institution of higher education or any employee of such an institution for any civil liability; or (ii) establish any standard of care.").

Finally, the U.S. Department of Education enacted, in accordance with the Clery Act's mandates, specific regulatory guidance, rules, and potential fines that apply to every institution that participates in any federal student financial assistance program. *34 C.F.R. § 668.46.* Resolving Plaintiffs' present issues within this regulatory framework is a better and more effective alternative remedy because a university's failure to comply with the mandates of the Clery Act may result in it not receiving federal funding for its student financial assistance programs. *34 C.F.R. § 668.1.* Accordingly, the Court will not exercise declaratory jurisdiction and Plaintiffs' Clery Act claims will be **DISMISSED WITH PREJUDICE.**

**D. Plaintiffs James Doe and Mary Doe's Standing to Pursue Contractual and Quasi-Contractual [**35] Claims Against the University**

Plaintiffs James Doe and Mary Doe assert several claims against Defendant that purportedly arise pursuant to a contractual or quasi-contractual relationship with the University. Compl. Counts I, II, XII. Plaintiffs contend that James Doe and Mary Doe entered into a contract implied in fact, a contract implied in law, and were third-party beneficiaries of John Doe's contract with the University of the South. Court Doc. 31, Pls.' Br. Show Cause at 2-5. Plaintiffs also contend that James Doe and Mary Doe are entitled to recover from the University under the doctrine of promissory estoppel and unjust enrichment. *Id.* at 5-6. The University contends that Plaintiffs have failed to present sufficient [*761] facts or law to establish that James Doe and Mary Doe have standing to pursue either contractual or quasi-contractual claims against the University. Court Doc. 32, Def.'s Resp. to Show Cause at 1-10.

For James Doe and Mary Doe to establish standing to sue the University under their breach of contract claims, they must first be able to prove the existence of a contract or for the Court to find that the parties must have

Case 3:12-cv-01462-WWE   Document 26-1   Filed 05/15/14   Page 25 of 27

Page 11

687 F. Supp. 2d 744, *761; 2009 U.S. Dist. LEXIS 95410, **35

entered into an agreement which is sufficiently [**36] definite and certain so that the terms are either determined or may be implied. [2] Plaintiffs James Doe and Mary Doe contend that the payment of tuition created a contractual or quasi-contractual relationship with the University. They have, however, failed to provide the Court with evidence or legal authority to support this proposition.

> 2   When jurisdiction is premised on diversity of citizenship, a plaintiff must have standing under both Article III and state law in order to maintain a cause of action. *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 173 (2d Cir. 2005)* (and cases cited therein); *Metro. Exp. Servs. Inc. v. City of Kansas City, Mo., 23 F.3d 1367, 1369-70 (8th Cir. 1994)* (and cases cited therein); *see also Myers v. Richland County, 429 F.3d 740, 749 (8th Cir. 2005)* (stating that a federal court cannot hear the plaintiff's state breach of contract claim unless he has standing to sue under state law); *Owens of Ga., Inc. v. Shelby County, 648 F.2d 1084, 1088-90 (6th Cir. 1981)* (applying state law to determine whether unsuccessful bidder had standing to challenge a contract award to another bidder).

It is fairly evident that the "payment of [**37] tuition does not create a contractual relationship between parents and a college" when the parents' child is over the age of majority. *Apffel v. Huddleston, 50 F. Supp. 2d 1129, 1133 (D. Utah 1999)*. When a child reaches the age of majority, such "standing simply transfers from the parent to the child." *Loch v. Bd. of Educ., No. 3:06-cv-17, 2007 U.S. Dist. LEXIS 67274, at * 5-6 (S.D.N.Y. Sept. 17, 2007)* (limiting parents' standing in an Individuals with Disabilities Education Act claim). Thus, the Court finds that Plaintiffs James Doe and Mary Doe have not pled sufficient facts, nor have they provided the Court legal authority, to support a claim for relief under a contract implied in fact theory.

Plaintiffs James Doe and Mary Doe have also failed to provide legal or factual authority to support a finding that they are entitled to recovery damages against the University under a contract implied at law or under an unjust enrichment theory. [3], [4] The Court will analyze [*762] Plaintiffs James Doe and Mary Doe's unjust enrichment and contract implied in law claims together

because they are essentially the same. [5] *Paschall's, Inc. v. Dozier, 219 Tenn. 45, 407 S.W. 2d 150, 154 (Tenn. 1966)* (holding that "[a]ctions [**38] brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and *quantum meruit* are essentially the same. Courts frequently employ the various terminology interchangeably to describe that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between parties, regardless of their assent thereto.").

> 3   The requirements for recovery under an unjust enrichment theory are as follows: 1) there must be no existing, enforceable contract between the parties covering the same subject matter, *Robinson v. Durabilt Mfg. Co., 195 Tenn. 452, 260 S.W.2d 174, 175 (1953)*; 2) the party seeking recovery must prove that it provided valuable goods and services, *Moyers v. Graham, 83 Tenn. 57, 62 (1885)*; 3) the party to be charged must have received the goods and services, *Jaffe v. Bolton, 817 S.W.2d 19, 26 (Tenn. Ct. App. 1991)*; 4) the circumstances must indicate that the parties involved in the transaction should have reasonably understood that the person providing the goods or services expected to be compensated, *V.L. Nicholson Co. v. Transcon Inv. & Fin. Ltd., 595 S.W.2d 474, 482 (Tenn. 1980)*; and (5) the circumstances [**39] must also demonstrate that it would be unjust for the party benefitting from the goods or services to retain them without paying for them. *Paschall's, Inc. v. Dozier, 219 Tenn. 45, 407 S.W.2d 150, 154 (Tenn. 1966)*.
>
> 4   In the aftermath of the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*, the United States Court of Appeals for the Sixth Circuit has explained that a plaintiff's allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *Bredesen, 500 F.3d 523, 527 (6th Cir. 2007)*. Moreover, the plaintiffs' "obligation to provide the 'grounds' of their entitlement to relief requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action." *Id. at 527*. "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under

687 F. Supp. 2d 744, *762; 2009 U.S. Dist. LEXIS 95410, **39

some viable legal theory." *Id.*

5   A party may recover damages in equity if there exists a contract implied in law, *see Paschall's, 407 S.W.2d at 153*; however, equitable relief is not available if there [**40] exists a contract implied in fact. *See Ridgelake, 2005 Tenn. App. LEXIS 210, 2005 WL 831594, at *8* (holding only contracts implied in law are creatures of equity); *see also, Daugherty v. Sony Elecs., Inc., 2006 Tenn. App. LEXIS 53, 2006 WL 197090 (Tenn.App. Jan. 26, 2006)* ("One of the underlying requirements for stating an unjust enrichment claim is that there is no valid and enforceable contract between the parties"); *Metro. Gov't of Nashville v. Cigna Healthcare of Tenn., 195 S.W.3d 28, 2005 WL 3132354 (Tenn. App. 2005)* ("Because a contract implied in fact exists, Metro is precluded from recovering damages under the equitable theory of unjust enrichment").

In this instance, Plaintiffs James Doe and Mary Doe have failed to allege sufficient facts to "show mutual intent or assent to contract" or to show whether the "ordinary course of dealing and common understanding ... [would] show a mutual intention to contract." *Weatherly v. American Agric. Chem. Co., 16 Tenn. App. 613, 65 S.W.2d 592, 598 (Tenn. 1933)*. The University's refund provision, which is part of the University's publications Plaintiffs rely upon to establish reliance, contains no express or implied reference to repayment of fees to parents or third [**41] parties who provide for a student's tuition funding. *See Defs.' Resp. Show Cause at 5*. Thus, the Court finds that Plaintiffs James Doe and Mary Doe have failed to plead facts or cite law which establish they have standing to pursue a contract implied in law or unjust enrichment claim against the University.

Plaintiffs have also failed to plead facts to support their allegations of promissory estoppel. Promissory estoppel is described in Tennessee as is:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Amacher v. Brown-Forman Corp., 826 S.W.2d 480, 482 (Tenn. App. 1991)* (quoting *Restatement of Contracts 2d. § 90*). "The limits of promissory estoppel are: (1) the detriment suffered in reliance must be substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance must have been foreseeable by the promisor; and (3) the promisee must have acted reasonably in justifiable reliance on the promise [**42] as made." *Calabro v. Calabro, 15 S.W.3d 873, 879 (Tenn. App. 1999)*.

While neither side disputes that Plaintiffs James Doe and Mary Doe provided their son money to pay for his education at [*763] the University, Plaintiffs have failed to cite any other legal or factual authority to support a finding that James Doe and Mary Doe reliance was justifiable. There is certainly no obligation that requires James Doe or Mary Doe to fund their adult son's college education or to provide financial support for their son. *Howard v. United States, 2 F.2d 170, 176 (E.D. Ky. 1924)* (stating a "parent is under no legal obligation to support an adult child," because "the legal liability for the support of the child ceases when it reaches the age of majority, unless the child is in such a feeble and dependent condition, physically or mentally, as to be unable to support itself.").

James Doe's and Mary Doe's affidavits, which attest that their "decision to pay [John Doe's] tuition and other expenses were made in reliance on the University's promises" set out in its "academic catalogues, publications, and the student handbook," fails to identify why the loss at issue, namely the payment of John Doe's tuition, would [**43] have been foreseeable to the University. *See Court Doc. 31-1*, Mary Doe's Aff., Court Doc. 31-2, James Doe Aff.

Were Plaintiffs James Doe's and Mary Doe's contentions in this regard to be adopted by the Court, any entity or individual funding a student's education would have standing to sue a college or university for a breach of an express or implied contract arising from representations made by a university in recruiting materials and publications. Plaintiffs can cite to no authority to support such a proposition because it is clearly contrary to established law. *See Apffel, 50 F. Supp. 2d at 1133* ("payment of tuition does not create a contractual relationship between parents and a college" when the parents' child is over the age of majority); *Runge v. Sanford, No. 6:08-231, 2009 U.S. Dist. LEXIS*

Case 3:12-cv-01462-WWE   Document 26-1   Filed 05/15/14   Page 27 of 27

Page 13

687 F. Supp. 2d 744, *763; 2009 U.S. Dist. LEXIS 95410, **43

*74506, * 5-6 (D. S.C. Feb. 25, 2009)* (plaintiff did not have standing to pursue an order staying the collection of his daughter's past due tuition fees by the state because she was over the age of majority).

Moreover, although Tennessee does recognize a claim of promissory estoppel, it does not liberally apply the doctrine and limits its application to "exceptional cases." *Barnes & Robinson Co., Inc. v. OneSource Facility Services, Inc., 195 S.W.3d 637 (Tenn. App. 2006).* [**44] Such exceptional cases are found only where defendant's conduct is akin to fraud. *Shedd v. Gaylord Entertainment Company, 118 S.W.3d 695 (Tenn. App. 2003).* In the instant case, Plaintiffs have not pled facts to support a finding that the University's conduct is the equivalent to fraud. Thus, the Court finds that Plaintiffs James Doe and Mary Doe have failed to plead sufficient facts to support a viable promissory estoppel claim against the University.

Plaintiffs James Doe and Mary Doe have also failed to establish that they have standing to sue as the intended beneficiaries of the contract between the University and John Doe. "Tennessee recognizes two kinds of third-party beneficiaries, intended and incidental. Only if a party is an intended beneficiary may it maintain an action to enforce the contract." *Davidson & Jones Dev. Co. v. Elmore Dev. Co., 921 F.2d 1343, 1356 (6th Cir. 1991).*

For Plaintiffs James Doe and Mary Doe to establish they were an intended beneficiary of the University's contract with John Doe, they must establish the clear intent of the contract was to benefit them. *Id.* This clear intent "may be shown if there is either an expression in the contract that the contracting [**45] parties intended to benefit the third party . . . or proof that the promisor's performance will otherwise discharge a duty owed to a third party beneficiary by the promisee . . . ." *Id.* [*764] (citation and quotation omitted). Plaintiffs James Doe and Mary Doe, however, have not provided the Court express contractual language indicating that they were the intended beneficiaries nor cited any proof establishing the same. Accordingly, Plaintiffs James Doe and Mary Doe's contractual and quasi-contractual claims against the University will be **DISMISSED WITH PREJUDICE.**

**E. The University's Objection to Magistrate's Memorandum and Order**

On August 7, 2009, United States Magistrate Judge Susan K. Lee issued a Memorandum and Order granting Plaintiffs' Motion to Proceed Under Pseudonyms and for Protective Order. [Court Doc. 21] Pursuant to *Rule 72(a) of the Federal Rules of Civil Procedure*, the University has filed timely objections to this non-dispositive ruling. [Court Doc. 25].

The Court has reviewed *de novo* Magistrate Judge Lee's Memorandum and Order to which an objection has been made. *Fed. R. Civ. Proc. 72(a).* The Court finds that Plaintiffs' objections raise no new arguments, but are simply a reargument [**46] of issues previously raised and which were fully addressed in the Report and Recommendation. The Court finds that further analysis of these same arguments would be merely cumulative and is unwarranted in light of Magistrate Judge Lee's well-reasoned and well-supported Memorandum and Order. Accordingly, the University's objections [Court Doc. 25] are **OVERRULED.**

**IV. CONCLUSION**

For the reasons explained above, Defendant's Motion for Partial Summary Judgment is **GRANTED.** [Court Doc. 10.] Counts III and IV of Plaintiffs Complaint are hereby **DISMISSED WITH PREJUDICE.** Plaintiffs James Doe and Mary Doe's Contractual and Quasi-Contractual Claims against the University [Counts I, II, XII] are also **DISMISSED WITH PREJUDICE.** The University's Objection to United States Magistrate Judge Susan K. Lee's Memorandum and Order granting Plaintiffs' Motion to Proceed Under Pseudonyms and for Protective Order [Court Doc. 25] is **OVERRULED.**

SO ORDERED this 13th day of October, 2009.

*/s/ Harry S. Mattice, Jr.*

HARRY S. MATTICE, JR.

UNITED STATES DISTRICT JUDGE