UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SUSAN BURHANS | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO.: |
| | : | 3:12 CV1462(WWE) |
| vs. | : | |
| | : | |
| YALE UNIVERSITY: | | |
| | : | |
| Defendant | : | DECEMBER 23, 2014 |

## MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

The defendant, Yale University ("Yale"), hereby submits this memorandum of law in support of its motion for protective order. This Court should enter a protective order prohibiting the plaintiff from deposing the following proposed deponents: Robert J. Alpern, Beth Baran, Melanie Boyd, Jill Cutler, Michael Della Rocca, Shelley Kagan, Shauna King, Richard Levin, Janet Lindner, Kathleen A. Martin, Thomas Pogge, Anna Ramirez, Peter Salovey and Kathryn Tanner. (See Exhibit A, "Witnesses Plaintiff Seeks to Depose.") The defendant's motion should be granted because the above individuals do not possess information relevant to the claims and defenses in this matter. Furthermore, even if these individuals possessed some marginally relevant information -- and they do not-- the minimal benefit to be obtained from their testimony would be greatly outweighed by the burden and expense of conducting the depositions of these fourteen individuals.

**DONAHUE, DURHAM & NOONAN, P.C.**
CONCEPT PARK • 741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL: (203) 458-9168 • FAX: (203) 458-4424
JURIS NO. 415438

## I.      FACTUAL BACKGROUND

The plaintiff was hired as security educator for Yale in 1999.  In this position, she was responsible for providing security education to members of the Yale community.  The plaintiff was not responsible for ensuring Yale's compliance with the Title IX Education Amendments Act of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"); the Clery Act, 20 U.S.C. § 1092(f)[1]; or any other statutes or regulations.  Plaintiff was placed on layoff status in 2010 due to the elimination of her position.  This occurred during the recession when a large number of Yale Security Department employees were laid off.  Plaintiff was subsequently re-hired for a one year position as a Manager 3 in the School of Medicine.  That position was then renewed for another year, and the plaintiff's employment with Yale ended on November 30, 2012 when the Manager 3 position expired.

In Count One of the Amended Complaint, the plaintiff asserts that the present lawsuit is an "action alleging unlawful retaliation in violation of [Title IX]."   (See Amended Complaint, ¶ 1.)  It is the plaintiff's claim that she was retaliated against "for her good faith reporting and complaining about Yale's noncompliance with Title IX."   (See Amended Complaint, ¶ 94; see also Amended Complaint, ¶¶ 3, 4, 12 and 17.)  However, the only specifically identified instance of alleged non-compliance about which the plaintiff complained was the underreporting of sexual assaults in 2003.  (See Amended Complaint, ¶ 22.)  In her deposition, the plaintiff simply states that she told her superior, Martha Highsmith, in the summer of 2003 when they were discussing the calculation of sexual assaults which had

occurred on campus, that the number being suggested  didn't "look right" to her and was "too low."  (See Exhibit B, Plaintiff's Deposition Transcript, 2nd Session, p. 43.)  According to the plaintiff, Ms. Highsmith then responded:  "We only have to report those that go to the police on sexual assault."  (See Exhibit B, p. 44.)  The plaintiff admits that she did not take any further steps in support of her disagreement with the contention that the Clery Act did not require the reporting of certain events, either because they were not made to a law enforcement agency or because the events did not actually occur on the Yale campus.  The plaintiff also claims that she proposed to her superior, Martha Highsmith, various ideas regarding programs and procedures to prevent and address sexual misconduct, and that these ideas were rejected by Ms. Highsmith.  (See Amended Complaint, ¶¶ 18 - 21, 23- 29.)  Nonetheless, the plaintiff claims that Yale repeatedly retaliated against her as a result of her "complaints" by, *inter alia*, taking away decision-making authority, denying her fair pay, rejecting applications for promotions, and ultimately terminating her employment effective November 2012.  (See Amended Complaint, Count One, ¶ 14.)  The plaintiff admitted in her deposition that she did not suggest to anyone at Yale that Martha Highsmith – or anyone else for that matter – was violating the Clery Act or Title IX.  (See Exhibit B, pp. 67, 170-183, 189-90.).

In Count Two of the Amended Complaint, the plaintiff alleges a claim of disparate treatment, on the basis of sex, in violation of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a-60, *et seq* ("CFEPA").  (See Amended Complaint, Count Two, ¶ 1.) The plaintiff alleges that she applied for various positions within the university, she was not

---

[1] The Clery Act requires all colleges and universities that participate in federal financial aid programs to keep and

hired to fill any of those positions, and male applicants were instead hired.  The plaintiff alleges that "the defendant has been consistently discriminating against the plaintiff in jobs and benefits because of her sex, in violation of the Connecticut Fair Employment Practices Act." (Amended Complaint, Count Two, ¶ 19.)

The plaintiff now seeks to depose fourteen individuals who had no involvement with her employment.  The plaintiff also makes no claim of having any involvement in the instances of alleged sexual misconduct at Yale of which the proposed deponents have knowledge.  (See Exhibit A.)  It is obvious that the plaintiff is not attempting to acquire information relevant to her claims, but instead seeks to use the discovery phase of this lawsuit to litigate every perceived claim of sexual misconduct at Yale of which she is aware.  Indeed, the plaintiff has already conducted several depositions, and the sole purpose of each deposition was to inquire of the deponent regarding his or her knowledge of various claims of gender discrimination or sexual misconduct at Yale University, even though those incidents had nothing to do with the plaintiff or her employment.  The plaintiff first deposed Linda Lorimer, on August 27, 2013, who is currently Yale's Vice President for Global and Strategic Initiatives.  Until the summer of 2010, Ms. Lorimer was responsible for safety and security and the Yale Police Department ("YPD").  Plaintiff's counsel asked very few questions during this deposition about Ms. Burhans or Ms. Lorimer's relationship with her.  Rather, the questioning focused largely on nineteen separate claims of alleged sexual assault or alleged

---

disclose information about crime on and near their respective campuses.

sexual harassment involving Yale staff or students.   None of those incidents involved the plaintiff or her work.

On December 23, 2013, the plaintiff deposed Peter Brano.  Mr. Brano was employed by the Yale Police Department for 22 years until April of 2011, at which time he accepted a position as a security officer with Yale New Haven Hospital.  This deposition consisted mostly of plaintiff's counsel asking questions concerning approximately ten sexual assault investigations in which Mr. Brano had been involved as a detective with the YPD.   None involved the plaintiff or her work at Yale.

On January 24, 2014, the plaintiff deposed Ms. Highsmith.  Ms. Highsmith hired the plaintiff and was one of her superiors until the plaintiff's position was eliminated in 2010.  Plaintiff's counsel questioned Ms. Highsmith regarding 16 different individuals who were either the alleged victim or alleged perpetrator in claims of sexual misconduct.

On April 1, 2014, the plaintiff deposed Constance Gerena.  Ms. Gerena is the mother of Alexandra Gerena, who claimed to be the victim of an alleged sexual assault by her boyfriend on the Yale campus in August of 2005.  Although Ms. Gerena was not on campus at the time of the assault and therefore had no personal knowledge of it, plaintiff's counsel questioned Ms. Gerena extensively regarding the details of the incident involving her daughter and the manner in which the incident was handled by Yale.  Plaintiff's counsel also questioned Ms. Gerena regarding her interactions with two other Yale students who claimed to be victims of sexual assault.  Ms. Gerena did not have any interaction with the plaintiff prior to the time that the plaintiff called Ms. Gerena to ask that she submit to a deposition in the present matter.  The

plaintiff had no responsibility for investigating or otherwise dealing with the incident involving Alexandra Gerena.

Perhaps the most glaring example of the plaintiff's misuse of the discovery phase of this litigation is her deposition of Heidi Lockwood. A copy of Ms. Lockwood's deposition transcript is attached hereto as Exhibit C. Ms. Lockwood, who was admitted to the Yale Graduate School in 2003 and was awarded her Ph.D. in Philosophy in 2009, was deposed on December 24, 2013. Despite the fact that Ms. Lockwood admitted she never had any interaction with the plaintiff while they were both employed at Yale, her deposition began at 9:35 a.m. and, upon concluding for the day at 12:59 p.m., the plaintiff had not completed her questioning. (See Exhibit C, p. 126.) Plaintiff's counsel spent the majority of Ms. Lockwood's deposition inquiring about Troy Cross, who Ms. Lockwood believes sexually assaulted another student. There is no claim in the present case that plaintiff had any involvement in the investigation of Professor Cross, that she was sexually assaulted by Professor Cross, or that she complained about Professor Cross's conduct to anyone at Yale.

Ms. Lockwood was also questioned extensively regarding her knowledge of, and involvement with, sexual misconduct allegations against faculty members George Bealer, Thomas Pogge and Jules Coleman. Again, there is no claim in this case that the plaintiff had any involvement in the investigation of these faculty members, that she was sexually assaulted by any of these faculty members, or that she complained about the conduct of these faculty members to anyone at Yale.

Despite stating that she has no personal knowledge, Ms. Lockwood was questioned concerning Annie Le, the Yale pharmacology student who was murdered on the Yale campus on September 8, 2009 by a coworker in the department, Raymond J. Clark, III, and was also questioned about the climate in the Pharmacology Department at that time.  Neither the plaintiff nor Ms. Lockwood worked in the Pharmacology Department; there is no claim that the plaintiff complained about the climate in the Pharmacology Department; there is no claim that she had any involvement with Annie Le; and there is no claim that she complained about any campus security issues related to Annie Le or the Pharmacology Department.  Ms. Lockwood was even questioned regarding the December 4, 1998 murder of Yale student Suzanne Jovin, which occurred prior to the commencement of plaintiff's employment at Yale.

The plaintiff therefore spent nearly three-and-a-half- hours questioning Ms. Lockwood regarding matters that have nothing to do with the claims in her lawsuit. Her lawyer indicated at the conclusion of that session of the deposition that he was not finished and would be seeking to schedule a second session of that deposition. There can be no question that the plaintiff seeks to question the fourteen proposed deponents about similarly irrelevant matters (see Exhibit A), and that such depositions will consume a great deal of time on the part of both parties.  The Federal Rules prohibit such use of the discovery process and therefore plaintiff should be precluded from deposing the fourteen individuals listed in Exhibit A.

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure define the scope of discovery as follows: "Parties may obtain discovery regarding any non-privileged *matter that is relevant to any party's claim or defense*. Fed. R. Civ. P. 26(b)(1) (emphasis added).    Fed. R. Civ. P. 26(b) further provides:

> [T]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
>> (i)   the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>>
>> (ii)  the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>>
>> (iii)   the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(C).  See also In re Fontaine, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975) ("While the standard of relevancy is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.") (citation omitted; internal quotation marks omitted); Oppenheimer Fund v. Sanders, 437 U.S. 340, 351-52 (1978) (holding that "discovery, like all matters of procedure, has ultimate and necessary boundaries") (citations omitted).

The district courts are afforded broad discretion under Rule 26(c) to issue protective orders limiting the scope of discovery.  Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d

Cir. 1992) ("[t]he grant and nature of protection is singularly within the discretion of the district court..."). The court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that the disclosure or discovery not be had." Fed. R. Civ. P. 26(c)(1). See also Gardner v. Univ. of Conn. Health Ctr., 2013 U.S. Dist. LEXIS 163784, *3-5 (D. Conn. Nov. 18, 2013). Judge Smith has observed: "Because the liberality of pretrial discovery has the potential to impinge on the privacy of a party, courts may issue protective orders which restrict permissible discovery if it would unduly annoy or burden the other party." LaPlante v. Estano, 228 F.R.D. 115, 116 (D. Conn. 2005), citing Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34, 104 S. Ct. 2199, 81 L.Ed. 2d 17 (1984). "[P]rotective orders issued under Rule 26(c) serve the vital function … of securing the just, speedy, and inexpensive determination of civil disputes …" (Internal quotation marks omitted.) S.E.C. v. TheStreet.com, 273 F.3d 222, 229 (2d Cir. 2001). See also Bridge C.A.T. Scan Assocs. v. Technicare Corp., 710 F.2d 940, 944-45 (2d Cir. 1983) (a protective order is a safeguard against "injury, harassment, or abuse of the court's processes.")

It is important to note that it is the plaintiff, not the defendant, who must demonstrate in the first instance that the discovery she is seeking has relevance to the present dispute. Thus, Judge Dorsey ruled: "A party seeking discovery has the initial burden such that some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." Vertrue Inc. v. Meshkin, 2006 U.S. Dist. LEXIS 37700, *8 (D. Conn. June 8, 2006) (internal quotation marks omitted).

### III.   ARGUMENT

**A.**   **The Plaintiff Should Be Precluded From Conducting The Proposed Discovery As It Will Not Lead To Information Relevant To Her Claims And The Burden And Expense Of The Proposed Discovery Outweighs Any Potential Benefit.**

The plaintiff should be prohibited from deposing the following individuals, as proposed in Exhibit A attached hereto: Robert J. Alpern, Beth Baran, Melanie Boyd, Jill Cutler, Michael Della Rocca, Shelley Kagan, Shauna King, Richard Levin, Janet Lindner, Kathleen A. Martin, Thomas Pogge, Anna Ramirez, Peter Salovey and Kathryn Tanner.  As an initial matter, none of the proposed deponents can offer information that is relevant to the plaintiff's retaliation and discrimination claims in this case.  See Fed. R. Civ. P. 26(b). Gordon v. Housing Authority of Hartford, 2007 U.S. Dist. LEXIS 89332 (D.Conn. Dec. 5, 2007) (Martinez, J.) is instructive as to this issue.  The plaintiff in Gordon was terminated from his position as Executive Director of defendant Housing Authority of Hartford ("HHA") and alleged claims of wrongful termination and violation of his First Amendment and due process rights.  In connection with his claims, the plaintiff sought to depose Mayor Eddie Perez of the City of Hartford.  Mayor Perez was not involved in the plaintiff's termination.  Id. at *4.  The plaintiff sought to depose Mayor Perez in order to inquire about his basis for appointing, and later discharging, the defendant members of the HHA's Board of Commissioners.  Id. at *5. The court precluded plaintiff from deposing Mayor Perez, holding in part:

> The plaintiff does not make any showing as to the relevance of Perez's reasons for appointing, and later discharging, the defendant board members. Although the standard for relevance is broad, there nonetheless must be some showing that the sought testimony

> is reasonably calculated to lead to the discovery of admissible evidence as to the specific allegations of the plaintiff's complaint.

Id. at *6.

Similar to Gordon, the discovery proposed by the present plaintiff is not reasonably calculated to lead to the discovery of admissible evidence as to the claims alleged in her complaint. "To establish a prima facie case for retaliation, a plaintiff must demonstrate participation in protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse employment action. The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Cruz v. Coach Stores, 202 F.3d 560, 565 (2d Cir. 2000) (internal citations and quotation marks omitted). Therefore, at issue in relation to the plaintiff's retaliation claim is whether the plaintiff raised concerns regarding Yale's compliance with Title IX. Additionally at issue is whether Yale retaliated against the plaintiff as a result of the fact that she raised such concerns. As to the plaintiff's CFEPA claim, as alleged in Count Two, she will be required to prove that she was not hired to fill a particular position because of her gender. See Conn. Gen. Stat. § 46a-60(a)(1); Gibson v. Naugatuck Housing Authority, 2007 U.S. Dist. LEXIS 65173, *8 (D.Conn. September 5, 2007).

The proposed deponents cannot offer relevant information as to these claims because they had no involvement in the plaintiff's employment. The proposed deponents simply cannot speak to the relevant issues in this case: they have no knowledge of plaintiff's alleged complaints of non-compliance with Title IX, they have no knowledge of whether the defendant

took any action in response to such alleged complaints, they have no knowledge of the plaintiff's applications for internal positions at Yale, and they have no knowledge of the defendant's motivation for hiring candidates other than the plaintiff to fill those positions. Simply put, none of them played any role in the plaintiff's employment at Yale; and none of them was involved in deciding not to hire the plaintiff when she applied for positions following her layoff.

It is clear from Exhibit A that plaintiff does not contend that the proposed deponents possess information regarding her employment.   Rather, the plaintiff seeks to question the proposed deponents regarding their knowledge of various claims of alleged sexual misconduct at Yale.   However, the plaintiff had no involvement in these alleged instances of sexual misconduct.   She also makes no claim that she reported these alleged instances of sexual misconduct and suffered retaliation as a result.   As such, the information that the plaintiff seeks to obtain from the proposed deponents is not relevant to her claims, nor will it lead to the discovery of admissible evidence.

Neither the details of any particular alleged instance of sexual misconduct, nor the statements made by the alleged victims or witnesses will lead to the discovery of admissible evidence as to whether the defendant subjected the plaintiff to an adverse employment action because she expressed her concerns as to the reporting of non-compliance with Title IX or because of her gender.  For example, the plaintiff seeks to depose Robert  J. Alpern, Dean of the Yale Medical School, because he was a "[t]op decision maker at Yale Medical School" and "allowed a hostile environment and has personal knowledge of known harassers and retaliation

resulting in top female scientists leaving their positions and fellowships."   (Exhibit A.) Whether or not there has been a hostile environment at the Yale Medical School has nothing whatsoever to do with whether the present plaintiff was retaliated against as a result of her actions while employed as a Communications Specialist for the Yale Security Department. (See Amended Complaint, Count Two, ¶ 4.)  Similarly, the jobs that the plaintiff claims she was not hired for because of her gender were with the Office of Security Programs and Human Resources, not the Medical School.  (See Amended Complaint, Count Two, ¶ 18.)  Finally, the plaintiff does not claim that she was retaliated against as a result of complaints about a hostile environment at the Yale Medical School.   The remaining proposed deponents are equally irrelevant to the plaintiff's claims in this lawsuit:

**Thomas Pogge, Professor of Philosophy and Shelly Kagan, Professor of Philosophy.**

> The plaintiff seeks to depose Thomas Pogge, because he is a "[c]urrent faculty member with a long history as a sexual predator," and Shelly Kagan, because he has knowledge of "Professor Pogge's long history as a sexual predator."  (See Exhibit A.)  This information is not relevant to the plaintiff's claims.  The plaintiff does not claim that she was subjected to any sexually inappropriate conduct by Professor Pogge, nor does she claim that she complained about Professor Pogge's conduct and suffered retaliation as a result.

**Beth Baran, retired Assistant State's Attorney.**

> Ms. Baran was involved in the prosecution of the individual accused of sexually assaulting Yale student Alexandra Gerena, which ultimately resulted in a plea

bargain.   Ms. Baran has no knowledge of Yale's decision to terminate the plaintiff's position or of its hiring decisions.   While the plaintiff seeks to question Ms. Baran regarding the testimony of Constance Gerena, that Yale denied Alexandra Gerena her civil rights, the present case does not involve whether Alexandra Gerena's civil rights had been denied.    The plaintiff does not claim that she made any complaint that Alexandra Gerena's civil rights were denied.

**Melanie Boyd, Assistant Dean of Student Affairs and Director, Office of Gender & Campus Culture**

The plaintiff claims that Ms. Boyd "[p]ut in place programming recommended years earlier by the plaintiff, who was thwarted in her efforts to do so," and seeks to depose Ms. Boyd on this basis.  (Exhibit A.)  Presumably, the plaintiff seeks this testimony in order to support her contention that, had the defendant implemented her suggested policies, instances of violence and sexual assault -- such as the murders of Ms. Le and Ms. Jovin -- would have been avoided.  Even if this lofty contention is assumed to be true, it is not relevant to the present case. The present case is not about whether Yale could have or should have implemented more effective sexual misconduct policies and programming. Rather, it concerns the defendant's motivation for its elimination of the plaintiff's position and for not hiring the plaintiff to a new position.   The defendant's decisions regarding sexual misconduct policies and programming have nothing to do with these issues, especially where there is no allegation that the plaintiff complained that existing policies and programs violated Title IX.

**Jill Cutler, former Assistant Dean for Academic Affairs and Secretary for the Executive Committee; and Michael Della Rocca, Professor of Philosophy and former Chair of the University-Wide Committee on Sexual Misconduct from 2011 through 2014.**

The plaintiff seeks to depose Ms. Cutler and Mr. Della Rocca regarding the defendant's sexual misconduct policies and its enforcement of those policies. Ms. Cutler and Mr. Della Rocca had no involvement in the plaintiff's employment. As Ms. Cutler and Mr. Della Rocca were involved in the adjudication of claims of sexual misconduct at Yale, the plaintiff will presumably seek to question them about various specific instances of alleged sexual conduct involving Yale students and faculty. As the plaintiff makes no claim of involvement in such instances of alleged sexual misconduct, or that she made any complaints related to specific instances of sexual misconduct, the proposed testimony of Ms. Cutler and Mr. Della Rocca has no relevance to this case.

**Shauna King, Vice President for Finance and Business Operations at Yale University.**

Plaintiff seeks to depose Ms. King regarding her knowledge of a sexually hostile environment to which Ann Murray Randolph was allegedly subjected. Ms. Randolph is a different claimant working in a different department than the present plaintiff. Whether or not Ms. Randolph was subjected to a hostile work environment has nothing to do with whether the present plaintiff was retaliated or discriminated against.

**Richard Levin, former President of Yale University.**

Former President Richard Levin had no involvement in the plaintiff's employment, the decision to eliminate the plaintiff's position, or the decision to not hire the plaintiff to a new position.  These decisions were made at the department level.  As such, he cannot provide information relevant to the plaintiff's claims.  The fact that the plaintiff sent a letter to President Levin does not change this fact.  (See Amended Complaint, Count One, ¶ 72.)  In addition, as described above with regard to Ms. Boyd, the defendant's policies regarding Title IX are not relevant to the plaintiff's claims.

**Janet Lindner, Deputy Vice President for Human Resources and Administration.**

The plaintiff seeks to depose Ms. Lindner regarding her knowledge of misconduct by Detective Brian Donnelly and Professor Thomas Pogge.  This information is not relevant to the plaintiff's claims.  The plaintiff does not claim that she was the victim of any alleged misconduct by Detective Donnelly or Professor Pogge, nor does she claim that she complained about Detective Donnelly or Professor Pogge's conduct and suffered retaliation as a result.

**Kathleen Martin, Professor for the Yale School of Medicine.**

The plaintiff seeks to depose Ms. Martin in order to question her concerning her knowledge about the hostile environment in the Pharmacology Department to which Annie Le was allegedly subjected.  This information is not relevant to the plaintiff's claim in this lawsuit.  As described above, the plaintiff did not work in

the Pharmacology Department, she did not complain about the climate in the Pharmacology Department, she had no involvement with Ms. Le, and there is no claim that she complained about any campus security issues related to Ms. Le or the Pharmacology Department.

**Anna Ramirez, former Associate Dean of Admissions and Financial Aid at the Yale Divinity School.**

Ms. Ramirez cannot offer any information relevant to the plaintiff's claims as the plaintiff was not an employee of the Divinity School and there is no claim that she complained about any conduct that occurred at the Divinity School.

**Peter Salovey, President of Yale University.**

The plaintiff seeks to depose President Salovey concerning Ms. Lockwood's testimony that he "attempted to cover up sexual misconduct of which she was a victim by pressuring her to sign a non-disclosure agreement…"   (Exhibit A.) Information regarding an alleged incident involving President Salovey and Ms. Lockwood is not relevant to the present plaintiff's claims.  The plaintiff does not claim any involvement in this incident, nor does she claim that she complained about this incident and was retaliated against as a result.  Similarly, President Salovey's alleged personal knowledge "of faculty of misconduct" has no relevance to the present claim as there is no allegation relating to faculty misconduct or the plaintiff complaining of faculty misconduct.  (Exhibit A.)  Indeed, the plaintiff doesn't even identify the nature of the misconduct.

**Kathryn Tanner, Professor for the Yale Divinity School.**

Ms. Tanner cannot offer any information relevant to the plaintiff's claims as the plaintiff was not an employee of the Divinity School and there is no claim that she complained about any conduct that occurred at the Divinity School. Alleged conduct directed against a male Divinity School student is immaterial as to the plaintiff's claims that she was subjected to retaliation and discrimination.

Therefore, as the proposed deponents cannot provide information that is relevant to the plaintiff's claims in this case, as required by Fed. R. Civ. P. 26(b)(1), the defendant's motion for protective order should be granted.

1.   Discovery Is Appropriately Limited To The Plaintiff's Department And The Department That Denied The Plaintiff's Job Applications.

At issue in this case is whether the plaintiff suffered an adverse employment action because she complained about non-compliance with Title IX or because of her gender. Other alleged instances of failure to comply with Title IX obligations does nothing to demonstrate that the particular individuals responsible for deciding to eliminate the plaintiff's position, and for deciding not to hire the plaintiff to a new position, acted with an improper motive. It is only relevant whether the decision-makers in this case acted with a discriminatory intent. Whether other individuals at Yale have at other times allegedly not complied with Title IX is not likely to lead to discoverable evidence regarding the intent of the decision-makers in this case.

"A vague possibility that loose and sweeping discovery might turn up something suggesting [a discriminatory motive] does not show particularized need and likely relevance that would require moving discovery beyond the natural focus of the inquiry." <u>Earley v. Champion International Corp.</u>, 907 F.2d 1077, 1085 (11th Cir. 1990).   Courts have recognized that in defining the scope of discovery in discrimination cases, the principal factor "is the level of the decision-maker whose policies are being challenged."  <u>Avillan v. Digital Equipment Corp.</u>, No. 91 Civ. 8594, 1994 WL 198771 (S.D.N.Y. May 17, 1994).  In the present case, the decision to eliminate the plaintiff's position was made at the department level, by Martha Highsmith.  The plaintiff claims that the jobs for which she applied were with the Office of Security Programs and Human Resources.  (<u>See</u> Amended Complaint, Count Two, ¶ 18.)  Therefore, depositions should be limited to individuals from these departments who have some knowledge of the circumstances behind the decision to eliminate the plaintiff's position and the decision to not hire the plaintiff following her layoff.

In <u>Earley</u>, <u>supra</u>, 907 F.2d at 1084, the district court denied the plaintiff's motion to compel nationwide discovery concerning "the identification of each person responsible for [the defendants] operation, the identification and function of each department, and a number and type of employee in each department and in the Company as a whole, by age for each year since January 1, 1990."  On appeal, the court held that the district court did not abuse its discretion in denying this discovery, stating:  "[I]n the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination – the employing unit or work unit. … Where, as here, the employment decisions were made locally, the discovery on

intent may be limited to the employing unit."  Id.  See also Obiajulu v. City of Rochester, 166 F.R.D. 293, 296 (W.D.N.Y. 1996) ("discovery may be appropriately limited to employment units, departments and sections in which employees similarly situated to the plaintiff are employed"). In this case, employment decisions regarding the plaintiff were made at the department level, and depositions should be limited accordingly.

> 2.  The Burden And Expense Of The Plaintiff's Proposed Depositions Outweigh Its Benefit.

The depositions that the plaintiff seeks to conduct amount to nothing more than a "fishing expedition" and should not be permitted.  Lerwick v. Kelsey, 150 Fed. Appx. 62, 65 (2d Cir. N.Y. 2005).  It must be noted that the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 26, are to "be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  Similarly, Fed. R. Civ. P. 26(b)(2)(C)(iii) requires preclusion where "the burden or expense of the proposed discovery outweighs its likely benefit . . ."  Allowing the plaintiff to question fourteen different individuals who had nothing to do with the plaintiff's employment, will not promote the "just, speedy, and inexpensive determination" of this action.  The court recognized as much in North River Ins. Co. v. Greater N.Y. Mut. Ins. Co., 872 F. Supp. 1411, 1411-1412 (E.D. Pa. 1995), in which a primary and excess insurance carrier disputed which was responsible for the payment of a settlement of a state court personal injury action.  The court denied the plaintiff's motion to compel the defendant to provide information as to whether it had previously been a party to other bad faith actions.  The court reasoned:

> These prior bad faith cases, if any, will necessarily involve totally different facts and circumstances from those present here. Such information … is highly unlikely to have any relevance… Any discovery of this material would properly be characterized as a fishing expedition, causing needless expense and burden to all concerned. Allowing such discovery would also run counter to the important but often neglected Rule 1 of the Federal Rules of Civil Procedure which requires that all rules "shall be construed and administered to secure the just, speedy and inexpensive determination of every action."

Id. at 1412. Similarly, details regarding allegations of sexual misconduct unrelated to the present plaintiff's claims are highly unlikely to lead to relevant evidence and the present plaintiff's attempt to acquire such information is properly characterized as a fishing expedition.

The discovery sought by the plaintiff is particularly inappropriate when considering the burden and expense involved. Conducting the depositions of fourteen different individuals is a time-consuming proposition on its own. However, such discovery is particularly burdensome when it appears that the plaintiff will question each deponent about their knowledge of the details of numerous alleged instances of sexual misconduct at Yale over a period of more than ten years.[2] As a result, each deposition is likely to take several hours -- if not an entire day -- to complete. As the proposed deponents had no involvement with the plaintiff's employment, and plaintiff had no involvement in -- nor did she complain of -- the instances of alleged sexual misconduct at Yale of which the proposed deponents are alleged to have knowledge,

---

[2] The plaintiff wishes to explore such matters commencing with the still unsolved murder of Yale senior Suzanne Jovin in 1998, the year before the plaintiff began her employment at Yale.

the slim chance of obtaining any relevant information is easily outweighed by the burden of conducting these fourteen depositions.

> 3.     Plaintiff Should Be Precluded From Deposing Yale University President Peter Salovey; Former President Richard Levin; Robert Alpern, Dean of Yale Medical School; Janet Lindner, Deputy Vice President for Human Resources and Administration at Yale University; and Shauna King, Vice President for Finance and Business Operations at Yale University, For The Additional Reason That They Are High Ranking Officials And Do Not Have Unique Knowledge Pertinent To The Issues In This Case.

"[C]ourts frequently restrict efforts to depose senior executives where the party seeking the deposition can obtain the same information through a less intrusive means, or where the party has not established that the executive has some unique knowledge pertinent to the issues in the case." Rodriguez v. SLM Corp., 2010 U.S. Dist. LEXIS 29344, *5, (D. Conn. Mar. 26, 2010) (Fitzsimmons, J.)  (internal quotation marks omitted.)  "[W]hen the discovery to be obtained is through the deposition of a senior executive, a court must remain mindful that permitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation."  (Internal quotation marks omitted.) Travel Center of Fairfield County v. Royal Cruise Line Ltd., No. 3:96 CV 10125, 2000 WL 306934 (D. Conn. January 24, 2000) (Margolis, J.), citing Tri-Star Pictures, Inc. v. Unger, 171 F.R.D. 94, 102 (S.D.N.Y. 1997).  "In deciding whether to permit the deposition of a corporate executive, a court must examine the possibility of harassment and the potential disruption of business." General Star Indemnity Co. v. Planitum Indemnity Ltd., 210 F.R.D. 80, 83 (S.D.N.Y. 2002).  "To prevent possible harassment, courts have sometimes required the examining party to settle for corporate

officers other than those noticed."   Amherst Leasing Corporation v. Emhart Corporation, 65
F.R.D. 121, 122 (D. Conn. 1974).

Courts have often prohibited parties from deposing high ranking corporate executives,
particularly where, as here, the executive has no knowledge of the facts underlying the lawsuit.  In
M.A. Porazzi Co. v. S.S. Mormaclark, 16 F.R.D. 383 (S.D.N.Y. 1951), the court held that the
deposition of the defendant's vice president could not be taken where it appeared that he could
contribute nothing beyond that which could be learned from an examination of the company's
general claims agent.  Id. at 383.  In Rodriguez, supra, the court precluded the plaintiff from
deposing two individuals who were members of defendant Sallie Mae's Executive Management
Team, as the plaintiff did not demonstrate that they possessed information that could not be
obtained from lower level employees, "much less that they possess unique factual information
and institutional knowledge necessary to the prosecution of this case."   Id. at *6-7. See also
Alliance Indus. v. Longyear Holding, Inc., 2010 U.S. Dist. LEXIS 119973, *15-16 (W.D.N.Y.
Mar. 19, 2010) (precluding deposition of high ranking official or corporate defendant because
plaintiff failed to show that he had "unique knowledge about the major areas in dispute.")

The plaintiff's stated justification for deposing President Salovey establishes that he does
not have unique knowledge pertinent to the issues in this case.  As to President Salovey, the
plaintiff states:

> Witness Heidi Lockwood testified that he attempted to cover up
> sexual misconduct of which she was a victim by pressuring her to
> sign a non-disclosure agreement, in clear violation of Yale's Title IX
> reporting obligations.   Has personal knowledge of faculty of
> misconduct and has actively participated in condoning it.

(Exhibit A.)   Information regarding an alleged incident involving President Salovey and Ms. Lockwood is not "necessary to the prosecution of this case." Rodriguez, supra, 2010 U.S. Dist. LEXIS 29344, *7.  The plaintiff does not claim any involvement in this incident, nor does she claim that she complained about this incident and was retaliated against as a result.  Similarly, President Salovey's alleged personal knowledge "of faculty of misconduct" has no relevance to the present claim as there is no allegation relating to faculty misconduct or the plaintiff complaining of faculty misconduct.  (Exhibit A.)  Indeed, the plaintiff doesn't even identify the nature of the misconduct.

Far from establishing that President Salovey has unique knowledge pertinent to the issues in this case, the plaintiff's justification demonstrates that she seeks to question him as to matters completely irrelevant and immaterial to this lawsuit.  Similarly, former President Levin, Dean Alpern, Deputy Vice President Linder, and Vice President King, do not possess information that is relevant to the plaintiff's claims -- as described above in section III.A above -- and therefore cannot be considered necessary witnesses or witnesses with unique knowledge pertinent to the issues in this case.  The plaintiff's attempt to depose President Salovey, former President Levin, Dean Alpern, Deputy Vice President Linder, and Vice President King is nothing more than a fishing expedition, and is intended to burden and harass the defendant.   For this additional reason, a protective order should be entered prohibiting the plaintiff from deposing President Salovey, former President Levin, Dean Alpern, Deputy Vice President Linder, and Vice President King.

IV.     **CONCLUSION**

For the reasons stated herein, the defendant's Motion for Protective Order should be granted and plaintiff should be prohibited from deposing the following individuals: Robert J. Alpern, Beth Baran, Melanie Boyd, Jill Cutler, Michael Della Rocca, Shelley Kagan, Shauna King, Richard Levin, Janet Lindner, Kathleen A. Martin, Thomas Pogge, Anna Ramirez, Peter Salovey and Kathryn Tanner.

THE DEFENDANT
YALE UNIVERSITY

BY:___/s/ Patrick M. Noonan  (#ct00189)___
         Patrick M. Noonan
         Matthew H. Geelan
         Donahue, Durham & Noonan, P.C.
         741 Boston Post Road
         Guilford, CT 06437
         (203) 458-9168

**CERTIFICATION**

I hereby certify that, on the above-written date, a copy of the foregoing Motion to Open Entry of Default was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

_____/s/_____
Patrick M. Noonan