IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------X
                                             :

SUSAN BURHANS                       :          3:12 CV 1462 (WWE)

V.                                                    :

YALE UNIVERSITY                   :          DATE: FEBRUARY 26, 2015
---------------------------------------------------------X

## RULING ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER

On October 12, 2012, plaintiff Susan Burhans commenced this lawsuit against Yale University (Dkt. #1), followed by an Amended Complaint, filed April 7, 2014. (Dkt. #51; see also Dkts. ##24-25). As set forth in the Amended Complaint, plaintiff had been employed as a Communications Specialist/Security Education Coordinator, and then as a Project Manager, at defendant from August 1999 until November 2012, when she was terminated; among plaintiff's responsibilities was oversight of defendant's compliance with Title IX. (Dkt. #51, at 1-23). Plaintiff asserts two counts: retaliation under Title IX in violation of 42 U.S.C. §§ 2000e-1 et seq. (Count One) and discrimination under the Connecticut Fair Employment Practices Act, CONN. GEN. STAT. § 46a-60 (Count Two). (Id. at 23-30). On January 14, 2015, defendant filed its answer and affirmative defenses. (Dkt. #41). Under the latest scheduling order, all discovery is to be completed by August 1, 2015. (See Dkts. ##39–40).

On December 23, 2014, defendant filed the pending Motion for Protective Order and brief in support. (Dkt. #38).[1] On January 14, 2015, plaintiff filed her brief in opposition.

---

[1] The following three exhibits were attached to defendant's brief: copy of Witnesses Plaintiff Seeks to Depose, dated November 8, 2014 (Exh. A); copy of excerpts from plaintiff's deposition, taken on January 10, 2014 (Exh. B); and copy of deposition of Heidi Lockwood, taken on December 24, 2013 (Exh. C)(filed under seal; see Dkts. ##43-44).

(Dkt. #42; see also Dkts. ##43-44).[2]  On February 4, 2015, defendant filed its reply brief. (Dkt. #47[3]; see also Dkts. ##45-46).  Two weeks later, Senior U.S. District Judge Warren W. Eginton referred this motion to this Magistrate Judge.  (Dkt. #50).

For the reasons stated below, defendant's Motion for Protective Order (Dkt. #38) is granted in part and denied in part.

## I. DISCUSSION

As set forth in defendant's brief, plaintiff already has deposed the following five members of the Yale community: (1) Linda Lorimer, currently Vice President for Global and Strategic Initiatives, and until the summer of 2010, responsible for safety and security, including the Yale Police Department ["YPD"] (focusing largely on nineteen separate claims of alleged sexual assault or sexual harassment involving Yale staff or students, none involving plaintiff or her work); (2) Peter Brano, who retired from the YPD in April 2011 (focusing on approximately ten sexual assault investigations in which Brano had been involved as a detective for the YPD, none involving plaintiff or her work); (3) Martha Highsmith, one of plaintiff's supervisors until 2010 (focusing on sixteen individuals who were either alleged victims or alleged perpetrators in claims of sexual misconduct); (4) Constance Gerena, mother of a Yale student who alleged that she was sexually assaulted by her boyfriend on the Yale campus in August 2005 (for which plaintiff had no responsibility in investigating this incident); and (5) Heidi Lockwood, who received her Ph.D. from Yale in 2009 (focusing on sexual misconduct in the Philosophy Department, with allegations against

---

[2]The following three exhibits were attached: sixty-nine page chronology (Exh. A); copies of case law (Exh. B); copies of letters from the U.S. Department of Education ["USDOE"] to defendant, as well as USDOE's Program Review Report, dated April 12, 2010, and Final Program Review Determination, filed May 23, 2011 (Exh. C).

[3]Attached as Exh. A is the job description for Coordinator III – Campus Police.

at least four faculty members with whom plaintiff had no involvement).   (Dkt. #38, Brief at 4-7 & Exh. C).

At issue here is plaintiff's intention to depose an additional fourteen individuals associated with Yale, as follows: (1) Dr. Robert J. Alpern, Dean of Yale Medical School, where plaintiff held a part-time job; (2) Beth Baran, retired Assistant State's Attorney, who prosecuted the boyfriend of Ms. Gerena's daughter, resulting in a plea bargain; (3) Melanie Boyd, Assistant Dean of Student Affairs and Director, Office of Gender & Campus Culture; (4) Jill Cutler, former Assistant Dean for Academic Affairs and Secretary for the Executive Committee ["ExComm"]; (5) Michael Della Rocca, Professor of Philosophy and former Chair of the University-Wide Committee ["UWC"] on Sexual Misconduct from 2011 through 2014; (6) Shelley Kagan, Professor of Philosophy; (7) Shauna King, Vice President for Finance and Business Operations; (8) Richard Levin, former President of Yale University; (9) Janet Lindner, Deputy Vice President for Human Resources and Administration; (10) Kathleen Martin, Professor at the Yale School of Medicine's Pharmacology Department; (11) Thomas Pogge, Professor of Philosophy (who is discussed in the Lockwood deposition); (12) Anna Ramirez, former Associate Dean of Admissions and Financial Aid at Yale Divinity School; (13) Peter Salovey,  current President of Yale University; and (14) Kathryn Tanner, Professor at Yale Divinity School.  (Dkt. #38, Brief at 1, 10-18, 25 & Exh. A).

Defendant argues that discovery here should be limited to plaintiff's department and to the departments that denied plaintiff's job applications, namely the Office of Security Programs and Human Resources.  (Id. at 18-20).  Defendant further contends that the burden and expense of plaintiff's proposed depositions outweigh their benefit, especially where the proposed topics include alleged instances of sexual misconduct at Yale for more

than a decade in departments totally unrelated to those where plaintiff was employed or to which she had applied, including the still unsolved murder of Yale senior Suzanne Jovin in 1998 (one year prior to plaintiff's employment at Yale) and the 2009 murder of Yale Medical student Annie Le.  (Id. at 14, 16-17, 20-22).   Lastly, defendant asserts that five of these proposed deponents are high ranking officials and do not have unique knowledge pertinent to the issues in this case, namely President Salovey, former President Levin, Dean Alpern, Deputy Vice President Lindner, and Vice President King.  (Id. at 22-24).

In contrast, plaintiff argues that these depositions will shed light upon her job responsibilities as Coordinator of Security Awareness, for which she was responsible for compliance with USDOE guidelines, specifically related to the Clery Act; she has attached a highly detailed, sixty-nine page chronology of plaintiff's involvement with Title IX issues at Yale, starting with Suzanne Jovin's complaints during the fall semester of 1998 and a lawsuit filed by a female Yale Divinity School student in October 1999.  (Dkt. #42, at 3-5 & Exh. A). Plaintiff also contends that the high-level employees ought to be deposed, and in particular, President Salovey, who was mentioned in the Lockwood deposition, and former President Levin, who received written communications from the USDOE.  (Id. at 5-6 & Exh. C).

In its brief in opposition, defendant disputes plaintiff's claim that she had been responsible for ensuring Yale's compliance with the Clery Act, and again posits that none of the deponents have information relevant to plaintiff's claims. (Dkt. #47, at 1-3 & Exh. A). Defendant also points out that plaintiff presented no support regarding Dr. Alpern, Deputy Vice President Lindner, and Vice President King, and the scant evidence regarding President Salovey and former President Levin is insufficient.  (Id. at 4-5).

Despite the meticulous documentation in plaintiff's chronology (Dkt. #42, Exh. A),

there are insufficient grounds for plaintiff to depose the six staff members from Yale Medical School and its Pharmacology Department, Yale Divinity School, and the Philosophy Department, as none of these departments are involved in the issues raised by plaintiff in her Amended Complaint, specifically Dr. Alpern, Professor Kagan, Dr. Martin, Professor Pogee, Dean Ramirez, and Professor Tanner.  The same holds true for Attorney Baran.  With respect to the four high-level employees, namely President Salovey, former President Levin, Vice President King, and Deputy Vice President Lindner, <u>based upon the present record</u>, there are insufficient grounds for them to be deposed, as their involvement in plaintiff's matters appears to be fairly remote.   Should additional evidence arise during the course of discovery, plaintiff is free to file a Motion for Reconsideration with respect to any of the four of them.  Thus, defendant's Motion for Protective Order (Dkt. #38) is <u>granted with respect to Dr. Alpern, Professor Kagan, Dr. Martin, Professor Pogee, Dean Ramirez, Professor Tanner, and Attorney Baran</u>, and similarly is <u>granted with respect to President Salovey, former President Levin, Vice President King, and Deputy Vice President Lindner, without prejudice to plaintiff seeking reconsideration, as appropriate, at a future time</u>.

In plaintiff's list of witnesses to be deposed, she included topics which appear to have some bearing on plaintiff's claims here for the three remaining deponents, namely Assistant Dean Boyd (who allegedly implemented programming for which plaintiff takes credit), Assistant Dean Cutler (who was a "fact finder" for ExComm), and Professor Della Rocca (who until recently headed the UWC regarding Title IX issues).  (Dkt. #38, Exh. A).  Defendant argues that none of these deponents had anything to do with the issues raised by plaintiff.  (Dkt. #38, Brief at 14-15).   Plaintiff's Amended Complaint and her detailed chronology, however, suggest otherwise, and at least at this juncture, there appears to be ample reason for these three individuals to be deposed.  Accordingly, defendant's Motion for

5

Protective Order (Dkt. #38) is <u>denied with respect to Assistant Deans Boyd and Cutler and Professor Della Rocca</u>.

## II.  CONCLUSION

For the reasons stated above, defendant's Motion for Protective Order (Dkt. #38) is <u>granted with respect to Dr. Alpern, Professor Kagan, Dr. Martin, Professor Pogee, Dean Ramirez, Professor Tanner, and Attorney Baran</u>, is <u>granted with respect to President Salovey, former President Levin, Vice President King, and Deputy Vice President Lindner, without prejudice to plaintiff seeking reconsideration, as appropriate, at a future time</u>, and is <u>denied with respect to Assistant Deans Boyd and Cutler and Professor Della Rocca</u>.[4]

This is not a Recommended Ruling, but a ruling on a non-dispositive motion, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a), 6(e) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

<u>See</u> 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen calendar days after service of same);**  FED. R. CIV. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; <u>Small v. Secretary, H&HS</u>, 892 F.2d. 15, 16 (2d Cir. 1989)(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).

---

[4]If any counsel believes that a settlement conference before this Magistrate Judge would be productive, he or she should contact this Magistrate Judge's Chambers accordingly.

Dated at New Haven, Connecticut, this 26th day of February, 2015.

        /s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge