UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

SUSAN BURHANS                                    :
                                                 :
          Plaintiff                              :          CIVIL ACTION NO.:
                                                 :          3:12 CV1462(WWE)
vs.                                              :
                                                 :
YALE UNIVERSITY:                                 
                                                 :
          Defendant                              :          MARCH 12, 2015

**DEFENDANTS' OBJECTION TO MAGISTRATE'S RULING ON
MOTION FOR PROTECTIVE ORDER**

      Pursuant to 28 U.S.C. § 636(b), Fed. R. Civ. P. 72, and L. Mag. R. 72.2, the defendant,

Yale University ("Yale"), hereby objects to the Magistrate's February 26, 2015 Ruling on

Defendant's Motion for Protective Order to the extent that it allows the plaintiff to proceed

with the depositions of Assistant Dean Melanie Boyd, Assistant Dean Jill Cutler, and Professor

Michael Della Rocca.  In the event that this Objection is denied, and the Court permits these

depositions to proceed, the defendant further seeks an order prohibiting the plaintiff from

questioning Dean Boyd, Dean Cutler, and Professor Della Rocca about confidential matters

relating to sexual misconduct complaints.

## I.    FACTUAL BACKGROUND

      The plaintiff was hired as security educator for Yale in 1999.  In this position, she was

responsible for providing security education to members of the Yale community.  The plaintiff

was not responsible for ensuring Yale's compliance with the Title IX Education Amendments

Act of 1972, 20 U.S.C. §§ 1681 *et seq.* ("Title IX"); the Clery Act, 20 U.S.C. § 1092(f)[1]; or any other statutes or regulations. Plaintiff was placed on layoff status in 2010 due to the elimination of her position. This occurred during the recession when a large number of Yale Security Department employees were laid off. Plaintiff was subsequently re-hired for a one year position as a Manager 3 in the School of Medicine. That position was then renewed for another year, and the plaintiff's employment with Yale ended on November 30, 2012 when the Manager 3 position expired.

In Count One of the Amended Complaint, the plaintiff asserts that the present lawsuit is an "action alleging unlawful retaliation in violation of [Title IX]." (See Amended Complaint, ¶ 1.) It is the plaintiff's claim that she was retaliated against "for her good faith reporting and complaining about Yale's noncompliance with Title IX." (See Amended Complaint, ¶ 94; see also Amended Complaint, ¶¶ 3, 4, 12 and 17.) However, the only specifically identified instance of alleged non-compliance about which the plaintiff complained was the underreporting of sexual assaults in 2003. (See Amended Complaint, ¶ 22.) In her deposition, the plaintiff simply states that she told her superior, Martha Highsmith, in the summer of 2003 when they were discussing the calculation of sexual assaults which had occurred on campus, that the number being suggested didn't "look right" to her and was "too low." (See Docket No. 38, Exhibit B, Plaintiff's Deposition Transcript, 2nd Session, p. 43.) According to the plaintiff, Ms. Highsmith then responded: "We only have to report those that go to the police on sexual assault." (See Docket No. 38, Exhibit B, p. 44.) The plaintiff

---

[1] The Clery Act requires all colleges and universities that participate in federal financial aid programs to keep and

admits that she did not take any further steps in support of her disagreement with the contention that the Clery Act did not require the reporting of certain events, either because they were not made to a law enforcement agency or because the events did not actually occur on the Yale campus.  The plaintiff also claims that she proposed to her superior, Martha Highsmith, various ideas regarding programs and procedures to prevent and address sexual misconduct, and that these ideas were rejected by Ms. Highsmith.  (<u>See</u> Amended Complaint, ¶¶ 18 - 21, 23- 29.)  Nonetheless, the plaintiff claims that Yale repeatedly retaliated against her as a result of her "complaints" by, *inter alia*, taking away decision-making authority, denying her fair pay, rejecting applications for promotions, and ultimately terminating her employment effective November 2012.   (<u>See</u> Amended Complaint, Count One, ¶ 14.)   The plaintiff admitted in her deposition that she did not suggest to anyone at Yale that Martha Highsmith – or anyone else for that matter – was violating the Clery Act or Title IX.  (<u>See</u> Exhibit B, pp. 67, 170-183, 189-90.).

In Count Two of the Amended Complaint, the plaintiff alleges a claim of disparate treatment, on the basis of sex, in violation of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a-60, *et seq* ("CFEPA").  (<u>See</u> Amended Complaint, Count Two, ¶ 1.) The plaintiff alleges that she applied for various positions within the university, she was not hired to fill any of those positions, and male applicants were instead hired.  The plaintiff alleges that "the defendant has been consistently discriminating against the plaintiff in jobs and

---

disclose information about crime on and near their respective campuses.

benefits because of her sex, in violation of the Connecticut Fair Employment Practices Act."

(Amended Complaint, Count Two, ¶ 19.)

The plaintiff initially sought to depose fourteen individuals who had no involvement with her employment.  On December 23, 2014, the defendant moved for a protective order to preclude the plaintiff from deposing these fourteen individuals on the ground that they do not possess information relevant to the claims and defenses in this matter.  (See Docket No. 38.) On February 26, 2015, Judge Margolis issued a Ruling granting in part, and denying in part, the defendant's Motion for Protective Order.  Pursuant to Magistrate Margolis' February 26, 2015 Ruling, the plaintiff is permitted to proceed with only three of the proposed depositions: Assistant Dean Boyd, Assistant Dean Cutler, and Professor Della Rocca.  The defendant now objects to the Ruling to the extent that it permits the plaintiff to depose these three individuals.

The plaintiff makes no claim of having any involvement in the instances of alleged sexual misconduct at Yale of which Assistant Dean Boyd, Assistant Dean Cutler, and Professor Della Rocca have knowledge.  (See Exhibit A.)  It is obvious that the plaintiff is not attempting to acquire information relevant to her claims, but instead seeks to use the discovery phase of this lawsuit to litigate every perceived claim of sexual misconduct at Yale of which she is aware.  Indeed, the plaintiff has already conducted several depositions, and the sole purpose of each deposition was to inquire of the deponent regarding his or her knowledge of various claims of gender discrimination or sexual misconduct at Yale University, even though those incidents had nothing to do with the plaintiff or her employment.  The plaintiff first deposed Linda Lorimer, on August 27, 2013, who is currently Yale's Vice President for

Global and Strategic Initiatives.  Until the summer of 2010, Ms. Lorimer was responsible for safety and security and the Yale Police Department ("YPD").  Plaintiff's counsel asked very few questions during this deposition about Ms. Burhans or Ms. Lorimer's relationship with her.  Rather, the questioning focused largely on nineteen separate claims of alleged sexual assault or alleged sexual harassment involving Yale staff or students.   None of those incidents involved the plaintiff or her work.

On December 23, 2013, the plaintiff deposed Peter Brano.  Mr. Brano was employed by the Yale Police Department for 22 years until April of 2011, at which time he accepted a position as a security officer with Yale New Haven Hospital.  This deposition consisted mostly of plaintiff's counsel asking questions concerning approximately ten sexual assault investigations in which Mr. Brano had been involved as a detective with the YPD.  None involved the plaintiff or her work at Yale.

On January 24, 2014, the plaintiff deposed Ms. Highsmith.  Ms. Highsmith hired the plaintiff and was one of her superiors until the plaintiff's position was eliminated in 2010.  Plaintiff's counsel questioned Ms. Highsmith regarding 16 different individuals who were either the alleged victim or alleged perpetrator in claims of sexual misconduct.

On April 1, 2014, the plaintiff deposed Constance Gerena.  Ms. Gerena is the mother of Alexandra Gerena, who claimed to be the victim of an alleged sexual assault by her boyfriend on the Yale campus in August of 2005.  Although Ms. Gerena was not on campus at the time of the assault and therefore had no personal knowledge of it, plaintiff's counsel questioned Ms. Gerena extensively regarding the details of the incident involving her daughter and the manner

in which the incident was handled by Yale.  Plaintiff's counsel also questioned Ms. Gerena regarding her interactions with two other Yale students who claimed to be victims of sexual assault.  Ms. Gerena did not have any interaction with the plaintiff prior to the time that the plaintiff called Ms. Gerena to ask that she submit to a deposition in the present matter.  The plaintiff had no responsibility for investigating or otherwise dealing with the incident involving Alexandra Gerena.

Perhaps the most glaring example of the plaintiff's misuse of the discovery phase of this litigation is her deposition of Heidi Lockwood.  (A copy of Ms. Lockwood's deposition transcript is attached as Exhibit C to Docket No. 38.)  Ms. Lockwood, who was admitted to the Yale Graduate School in 2003 and was awarded her Ph.D. in Philosophy in 2009, was deposed on December 24, 2013.  Despite the fact that Ms. Lockwood admitted she never had any interaction with the plaintiff while they were both employed at Yale, her deposition began at 9:35 a.m. and, upon concluding for the day at 12:59 p.m., the plaintiff had not completed her questioning.  (See Docket No. 38, Exhibit C, p. 126.)  Plaintiff's counsel spent the majority of Ms. Lockwood's deposition inquiring about Troy Cross, who Ms. Lockwood believes sexually assaulted another student.  There is no claim in the present case that plaintiff had any involvement in the investigation of Professor Cross, that she was sexually assaulted by Professor Cross, or that she complained about Professor Cross's conduct to anyone at Yale.

Ms. Lockwood was also questioned extensively regarding her knowledge of, and involvement with, sexual misconduct allegations against faculty members George Bealer, Thomas Pogge and Jules Coleman.  Again, there is no claim in this case that the plaintiff had

any involvement in the investigation of these faculty members, that she was sexually assaulted by any of these faculty members, or that she complained about the conduct of these faculty members to anyone at Yale.

Despite stating that she has no personal knowledge, Ms. Lockwood was questioned concerning Annie Le, the Yale pharmacology student who was murdered on the Yale campus on September 8, 2009 by a coworker in the department, Raymond J. Clark, III, and was also questioned about the climate in the Pharmacology Department at that time.   Neither the plaintiff nor Ms. Lockwood worked in the Pharmacology Department; there is no claim that the plaintiff complained about the climate in the Pharmacology Department; there is no claim that she had any involvement with Annie Le; and there is no claim that she complained about any campus security issues related to Annie Le or the Pharmacology Department.   Ms. Lockwood was even questioned regarding the December 4, 1998 murder of Yale student Suzanne Jovin, which occurred prior to the commencement of plaintiff's employment at Yale.

The plaintiff therefore spent nearly three-and-a-half- hours questioning Ms. Lockwood regarding matters that have nothing to do with the claims in her lawsuit. Her lawyer indicated at the conclusion of that session of the deposition that he was not finished and would be seeking to schedule a second session of that deposition. There can be no question that the plaintiff seeks to question Dean Boyd, Dean Cutler, and Professor Della Rocca about similarly irrelevant matters, and that such depositions will consume a great deal of time on the part of both parties.   In addition, the plaintiff likely seeks to question these deponents regarding highly sensitive matters concerning individuals who are not parties to this lawsuit.   The

Federal Rules prohibit such use of the discovery process and therefore the defendant's objection to the Magistrate's February 26, 2015 Ruling should be sustained.

## II.    ARGUMENT

### A.    <u>The Court Should Sustain the Defendant's Objection to the Magistrate's Ruling as it Pertains to Assistant Dean Boyd, Assistant Dean Cutler, and Professor Della Rocca.</u>

Review of Magistrate Margolis' Ruling on the defendant's Motion for Protective Order, a nondispositive motion, is under the standard of "clearly erroneous or contrary to law." <u>See</u> Fed. R. Civ. P. 72(a); Local R. 72.1(C)(2), 72.2(b).  <u>See also</u> <u>Veritas-Scalable Inv. Prods. Fund, LLC v. Fb Foods, Inc.</u>, 238 F.R.D. 339, 341, 2006 U.S. Dist. LEXIS 73278, 2 (D. Conn. 2006).  The Ruling in this case is clearly erroneous and contrary to law because Dean Boyd, Dean Cutler, and Professor Della Rocca do not possess information relevant to the claims and defenses in this matter and plaintiff has failed to demonstrate otherwise.

At the outset, it is important to note that it is the plaintiff, not the defendant, who must demonstrate in the first instance that the discovery she is seeking has relevance to the present dispute.  Thus, Judge Dorsey ruled:  "A party seeking discovery has the initial burden such that some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." <u>Vertrue Inc. v. Meshkin</u>, 2006 U.S. Dist. LEXIS 37700, *8 (D. Conn. June 8, 2006) (internal quotation marks omitted).  Under similar circumstances, one Connecticut District Court precluded a plaintiff from deposing certain individuals because of the plaintiff's failure to demonstrate the relevance of such proposed testimony.   In <u>Gordon v.</u>

Housing Authority of Hartford, 2007 U.S. Dist. LEXIS 89332 (D.Conn. Dec. 5, 2007) (Martinez, J.), the plaintiff was terminated from his position as Executive Director of defendant Housing Authority of Hartford ("HHA") and alleged claims of wrongful termination and violation of his First Amendment and due process rights.  In connection with his claims, the plaintiff sought to depose Mayor Eddie Perez of the City of Hartford.  Mayor Perez was not involved in the plaintiff's termination.  Id. at *4.  The plaintiff sought to depose Mayor Perez in order to inquire about his basis for appointing, and later discharging, the defendant members of the HHA's Board of Commissioners.  Id. at *5.  The court precluded plaintiff from deposing Mayor Perez, holding in part:

> The plaintiff does not make any showing as to the relevance of Perez's reasons for appointing, and later discharging, the defendant board members. Although the standard for relevance is broad, there nonetheless must be some showing that the sought testimony is reasonably calculated to lead to the discovery of admissible evidence as to the specific allegations of the plaintiff's complaint.

Id. at *6.

Similar to Gordon, the depositions of Assistant Dean Boyd, Assistant Dean Cutler, and Professor Della Rocca are not reasonably calculated to lead to the discovery of admissible evidence as to the claims alleged in the complaint.  "To establish a prima facie case for retaliation, a plaintiff must demonstrate participation in protected activity known to the defendant, an employment action disadvantaging the person engaged in the protected activity, and a causal connection between the protected activity and the adverse employment action. The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination."  Cruz v. Coach Stores, 202 F.3d 560, 565 (2d Cir. 2000) (internal citations

and quotation marks omitted).  Therefore, at issue in relation to the plaintiff's retaliation claim is whether the plaintiff raised concerns regarding Yale's compliance with Title IX. Additionally at issue is whether Yale retaliated against the plaintiff as a result of the fact that she raised such concerns. As to the plaintiff's CFEPA claim, as alleged in Count Two, she will be required to prove that she was not hired to fill a particular position because of her gender. See Conn. Gen. Stat. § 46a-60(a)(1); Gibson v. Naugatuck Housing Authority, 2007 U.S. Dist. LEXIS 65173, *8 (D.Conn. September 5, 2007).

Dean Boyd, Dean Cutler, and Professor Della Rocca cannot offer relevant information as to these claims because they had no involvement in the plaintiff's employment, and the plaintiff makes no claim that they had any such involvement.  Melanie Boyd, since October of 2011, has been the Assistant Dean of Student Affairs of Yale College, Director of the Office of Gender & Campus Culture, and a lecturer in Women's, Gender and Sexuality Studies.  Dean Boyd has also played a role in developing Title IX programming for Yale.  Presumably, the plaintiff seeks Dean Boyd's testimony in order to support her contention that, had the defendant implemented her suggested policies, instances of violence and sexual assault -- such as the murders of Ms. Le and Ms. Jovin -- would have been avoided.  Even if this lofty contention is assumed to be true, it is not relevant to the present case.  The present case is not about whether Yale could have or should have implemented more effective sexual misconduct policies and programming.  Rather, it concerns the defendant's motivation for its elimination of the plaintiff's position and for not hiring the plaintiff to a new position.  The defendant's decisions regarding sexual misconduct policies and programming have nothing to do with

these issues, especially where there is no allegation that the plaintiff complained that existing policies and programs violated Title IX.

Jill Cutler has been retired since 2010 and is the former Assistant Dean for Academic Affairs at Yale College.   Dean Cutler was also Secretary for the Executive Committee ("ExComm"), which was the precursor to the University-Wide Committee on Sexual Misconduct ("UWC").[2]   Professor Della Rocca is a professor of Philosophy and was the Chair of the UWC from its inception in 2011 through 2014.   Dean Cutler and Professor Della Rocca had no involvement in the plaintiff's employment.   As Ms. Cutler and Mr. Della Rocca were involved in the adjudication of claims of sexual misconduct at Yale, the plaintiff will presumably seek to question them about various specific instances of alleged sexual misconduct involving Yale students and faculty (as she has done in the depositions that she has conducted to date).   As the plaintiff makes no claim of involvement in such instances of alleged sexual misconduct, or that she made any complaints related to specific instances of sexual misconduct, the proposed testimony of Ms. Cutler and Mr. Della Rocca has no relevance to this case.

Dean Boyd, Dean Cutler, and Professor Della Rocca simply cannot speak to the relevant issues in this case: they have no knowledge of plaintiff's alleged complaints of non-compliance with Title IX, they have no knowledge of whether the defendant took any action in response to such alleged complaints, they have no knowledge of the plaintiff's applications for

---

[2] The UWC is designed to address allegations of sexual misconduct of every kind and is available to students, faculty and staff across Yale according to the guidelines described in the UWC's procedures.  Prior to July, 2011,

internal positions at Yale, and they have no knowledge of the defendant's motivation for hiring candidates other than the plaintiff to fill those positions.    Simply put, none of them played any role in the plaintiff's employment at Yale; and none of them was involved in deciding not to hire the plaintiff when she applied for positions following her layoff.

In reaching her determination as to the depositions of Dean Boyd, Dean Cutler, and Professor Della Rocca, Judge Margolis relied on the plaintiff's list of proposed deponents (see Docket No. 38, Exhibit A), and the plaintiff's chronology (see Docket No. 42, Exhibit A). Neither document provides sufficient ground for the plaintiff to depose these individuals.  The plaintiff's list of proposed deponents merely provides as follows:

MELANIE BOYD

Put in place programming recommended years earlier by the plaintiff, who was at the time thwarted in her efforts to do so.

JILL CUTLER

As ExComm "factfinder" participated in the defendant's "soft" policies toward sexual offenders, which policies she subsequently criticized.

MICHAEL DELLA ROCCA

Until earlier this year, headed the UWC in responding to Title IX issues including past failures to comply.

(See Docket No. 38, Exhibit A.)

---

when the UWC began its work, all cases of student misconduct, including cases of sexual misconduct, were heard

The above conclusory and unsupported statements do not demonstrate that these individuals played any role in the plaintiff's employment or that they could offer any testimony that is reasonably calculated to lead to the discovery of admissible evidence. The plaintiff's chronology similarly fails to provide any basis. The chronology merely mentions Dean Boyd and Dean Cutler in passing, and makes no mention of Professor Della Rocca. As to Assistant Dean Boyd, the plaintiff merely claims that she attended a meeting with her at which the issue of "bringing Yale police into sexual assault and protocol in a more meaningful way" was discussed, and that Dean Boyd observed the plaintiff's work with students in Safety Net Meetings. (See Docket No. 42, Exhibit A, p. 58.) As to Assistant Dean Cutler, the plaintiff claims in conclusory fashion that she "attempt[ed] to work" with her to assess training programs, and that she emailed Dean Cutler regarding ExComm procedures and did not receive a response. (See Docket No. 42, Exhibit A, pp. 10 and 13.) Defense counsel's review of the plaintiff's chronology did not reveal any mention of Professor Della Rocca.

The above "evidence," which consists entirely of the plaintiff's unsupported assertions and does not demonstrate that Dean Boyd, Dean Cutler, or Professor Della Rocca will be able to offer testimony as to any issue that is relevant to this case. As such, it was error for the Magistrate to rely on these documents in denying the defendant's motion for protective order to preclude the plaintiff from deposing these individuals. These individuals have no knowledge of plaintiff's alleged complaints of non-compliance with Title IX, they have no knowledge of whether the defendant took any action in response to such alleged complaints,

---

by ExComm.

they have no knowledge of the plaintiff's applications for internal positions at Yale, and they have no knowledge of the defendant's motivation for hiring candidates other than the plaintiff to fill those positions. At most, they had only incidental interactions with the plaintiff.  The testimony of Dean Boyd, Dean Cutler, and Professor Della Rocca, will therefore not lead to the discovery of admissible evidence, and any minimal benefit that might be obtained from their testimony would be greatly outweighed by the burden and expense of conducting the depositions.

The Magistrate's Ruling, as it relates to the depositions of Dean Boyd, Dean Cutler, and Professor Della Rocca, is clearly erroneous and contrary to law for the additional reason that it allows for discovery outside the plaintiff's work unit.  At issue in this case is whether the plaintiff suffered an adverse employment action because she complained about non-compliance with Title IX or because of her gender.  Other alleged instances of failure to comply with Title IX obligations does nothing to demonstrate that the particular individuals responsible for deciding to eliminate the plaintiff's position, and for deciding not to hire the plaintiff to a new position, acted with an improper motive.  It is only relevant whether the decision-makers in this case acted with a discriminatory intent.  Whether other individuals at Yale have at other times allegedly not complied with Title IX is not likely to lead to discoverable evidence regarding the intent of the decision-makers in this case.

"A vague possibility that loose and sweeping discovery might turn up something suggesting [a discriminatory motive] does not show particularized need and likely relevance that would require moving discovery beyond the natural focus of the inquiry."  Earley v. Champion

International Corp., 907 F.2d 1077, 1085 (11th Cir. 1990).   Courts have recognized that in defining the scope of discovery in discrimination cases, the principal factor "is the level of the decision-maker whose policies are being challenged."   Avillan v. Digital Equipment Corp., No. 91 Civ. 8594, 1994 WL 198771 (S.D.N.Y. May 17, 1994).   In the present case, the decision to eliminate the plaintiff's position was made at the department level, by Martha Highsmith.   The plaintiff claims that the jobs for which she applied were with the Office of Security Programs and Human Resources.   (See Amended Complaint, Count Two, ¶ 18.)   Therefore, depositions should be limited to individuals from these departments who have some knowledge of the circumstances behind the decision to eliminate the plaintiff's position and the decision to not hire the plaintiff following her layoff.

In Earley, supra, 907 F.2d at 1084, the district court denied the plaintiff's motion to compel nationwide discovery concerning "the identification of each person responsible for [the defendants] operation, the identification and function of each department, and a number and type of employee in each department and in the Company as a whole, by age for each year since January 1, 1990."   On appeal, the court held that the district court did not abuse its discretion in denying this discovery, stating:   "[I]n the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination – the employing unit or work unit. … Where, as here, the employment decisions were made locally, the discovery on intent may be limited to the employing unit."   Id.   See also Obiajulu v. City of Rochester, 166 F.R.D. 293, 296 (W.D.N.Y. 1996) ("discovery may be appropriately limited to employment units, departments and sections in which employees similarly situated to the plaintiff are employed").

In this case, employment decisions regarding the plaintiff were made at the department level, and depositions should be limited accordingly.

Therefore, for the reasons stated herein, the Magistrate's Ruling to allow the plaintiff to depose Dean Boyd, Dean Cutler, and Professor Della Rocca was clearly erroneous and contrary to law.  The defendant's objection to the Ruling should be sustained.

**B.      The Plaintiff Should Be Precluded from Questioning the Deponents about Confidential Matters Relating to Sexual Misconduct Complaints.**

If the Court allows the depositions of Dean Boyd, Dean Cutler, and Professor Della Rocca to proceed, the defendant requests an order that the plaintiff is prohibited from questioning these deponents about confidential matters relating to sexual misconduct complaints.  As described above, Dean Boyd, Dean Cutler, and Professor Della Rocca played a role in Yale's ExComm, UWC and Title IX programming.  As such, these individuals have knowledge of specific incidents and allegations of sexual misconduct involving Yale students and personnel.  Information regarding specific instances or allegations of sexual misconduct at Yale is not reasonably calculated to lead to the discovery of admissible evidence.  Indeed, such questioning is little more than a fishing expedition.  The plaintiff's fishing expedition is particularly unwarranted in light of the private nature of the information the plaintiff seeks to obtain.

The present plaintiff's attorney should certainly be aware of a sexual assault victim's right to privacy, as he represented the plaintiff in Doe v. Tencza, 2012 U.S. Dist. LEXIS 112109 (D.Conn. August 9, 2012) (Arterton, J.)  The plaintiff there, a victim of sexual assault, claimed that the defendant police officer violated her constitutional rights to privacy "by

preparing an application for a warrant for [the accused's] arrest containing unnecessary and intimate details of Ms. Doe's sex life and her relationship with [the accused]."  Although Judge Arterton ultimately dismissed the plaintiff's claim because there was no allegation that the plaintiff was identified in the application, she did recognize that "[t]here exists in the United States Constitution a right to privacy protecting the individual interest in avoiding disclosure of personal matters."  (Internal quotation marks omitted.)  Id. at *5, citing Doe v. City of New York, 15 F.3d 264, 267 (2d Cir. 1994).  Judge Arterton also favorably cited Bloch v. Ribar, 156 F.3d 673, 685-86 (6th Cir. 1998), wherein the court held that "a rape victim has a fundamental right of privacy in preventing government officials from gratuitously and unnecessarily releasing the intimate details of [a] rape where no penalogical purpose is being served."  See Tencza, supra, 2012 U.S. Dist. LEXIS 112109 at *6-7.  The Bloch court also persuasively reasoned that:

> Crimes of sexual violence necessarily include a nonconsensual sexual act. The crime of rape, for example, cannot be separated from the sexual act itself. For this reason, a historic social stigma has attached to victims of sexual violence. In particular, a tradition of "blaming the victim" of sexual violence sets these victims apart from those of other violent crimes. Releasing the intimate details of rape will therefore not only dissect a particularly painful sexual experience, but often will subject a victim to criticism and scrutiny concerning her sexuality and personal choices regarding sex.

> Our sexuality and choices about sex, in turn, are interests of an intimate nature which define significant portions of our personhood. Publically revealing information regarding these interests exposes an aspect of our lives that we regard as highly personal and private.  Indeed, for many of these reasons, a number of our sister circuits have concluded that information regarding private sexual matters warrants constitutional protection against public dissemination....

> The fact that the crime of rape occurred in this case implicates both
> a private and a public interest, *but the details of the rape primarily
> implicate a private interest until such time as the public interest in
> prosecution predominates. We therefore conclude that a rape
> victim has a fundamental right of privacy* in preventing
> government officials from gratuitously and unnecessarily releasing
> the intimate details of the rape where no penalogical purpose is
> being served.

(Citations omitted; emphasis added.)  Id. at 685-86.

The Connecticut legislature has also recognized a sexual assault victim's right to privacy.  Conn. Gen. Stat. § 54-86e provides, in relevant part:

> The name and address of the victim of a sexual assault under
> section 53a-70, 53a-70a, 53a-71, 53a-72a, 53a-72b or 53a-73a …
> and such other identifying information pertaining to such victim as
> determined by the court, shall be confidential and shall be
> disclosed only upon order of the Superior Court …

The questioning of these deponents regarding allegations and incidents of sexual misconduct involving Yale students is also likely to reveal personally identifiable information from education records.  As such, this information falls under the Family Education Rights and Privacy Act of 1974, 20 U.S.C. § 1232g (1989), also known as the Buckley Amendment ("FERPA").  The purpose of FERPA is to "assure parents of students . . . access to their education records and to protect such individuals' right to privacy by limiting the transferability (and disclosure) of their records without their consent." Rios v. Read, 73 F.R.D. 589, 597 (E.D.N.Y.1977) (quoting 120 Cong. Rec. S21497 (daily ed. Dec. 13, 1974) (joint remarks of Sen. Buckley and Sen. Pell)).   FERPA prohibits an educational institution from "releasing, or providing access to, any personally identifiable information in education records

other than directory information . . . unless-- . . . such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institutional or agency."   20 U.S.C. § 1232g (b)(2)(B).[3]   In addition to providing notice, the institution is to inform the student (or the student's parents) that they have a right to object to the disclosure of educational records.  See Rios, supra, 73 F.R.D. at 601.

The details of complaints of sexual misconduct are confidential in nature and, based on the plaintiff's conduct in previous depositions, it is anticipated that she will seek to question Dean Boyd, Dean Cutler, and Professor Della Rocca regarding specific allegations and instances of sexual misconduct.  Therefore, if the Court permits the plaintiff to proceed with the depositions of Dean Boyd, Dean Cutler, and Professor Della Rocca, she should be precluded from questioning these deponents about confidential matters relating to sexual misconduct complaints.

## III.   CONCLUSION

Therefore, for the reasons stated herein, the defendant's objection to the Magistrate's February 26, 2015 Ruling should be sustained.

---

[3] It should be noted that 20 U.S.C. 1232g(d) states, "[f]or the purposes of this section, whenever a student has attained eighteen years of age, or is attending an institution of postsecondary education, the permission or consent required of, and the rights accorded to, the parents of the student shall thereafter only be required of and accorded to the student."

THE DEFENDANT
YALE UNIVERSITY


BY:___/s/ Patrick M. Noonan  (#ct00189)___
        Patrick M. Noonan
        Donahue, Durham & Noonan, P.C.
        741 Boston Post Road
        Guilford, CT 06437
        (203) 458-9168

**<u>CERTIFICATION</u>**

I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

_____/s/_____
Patrick M. Noonan